MANDALAY ASSOCIATES LIMITED PARTNERSHIP *et al.*, Plaintiffs-Appellants, v. ALFRED HOFFMAN, JR., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 85—1339

Opinion filed March 7, 1986.

Sperling, Slater & Spitz, of Chicago, for appellants.

Michael Weininger and Lester A. Ottenheimer III, both of Katz, Randall & Weinberg, of Chicago, for appellees.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiffs appeal from an order dismissing for lack of personal jurisdiction their action for breaches of contract and of fiduciary duty. They contend that defendants' contacts with Illinois were sufficient to subject them to jurisdiction under its long-arm statute. We agree.

The individual plaintiffs, who reside in Illinois, are the general partners of plaintiff, Mandalay Associates Limited Partnership (the partnership), which was organized under the laws of Florida but has its principal office in Chicago. The partnership was formed for the purpose of acquiring, rehabilitating and operating an apartment project in Clearwater Beach, Florida, known as the Mandalay Shores Apartments (The Mandalay Project). Defendant Albert Hoffman, Jr. (Hoffman), a Florida real estate developer and sole owner of defendant Hoffman Construction Company (Hoffman Company), is a limited partner of the partnership. Hoffman Company is a Florida corporation engaged in the business of residential and commercial building construction in the area of Tampa, Florida.

In an affidavit submitted in opposition to defendants' motion to dismiss, plaintiff Chertow stated that he and the other individual plaintiffs negotiated the terms and financial arrangements of the partnership agreement (the agreement) with Hoffman during six meetings held in Illinois between August 1981 and February 1982. The terms of the agreement included the matters at issue in the present litigation, *i.e.*, Hoffman's undertaking that Hoffman Company, his wholly owned corporation, would serve as management supervisor for The Mandalay Project; and Hoffman's agreements, as president of Hoffman Company that for a fee, (a) Hoffman Company would serve as construction management agent for the partnership; and (b) he would enter into a covenant not to compete with the partnership. In his discovery deposi-

tion, Hoffman admitted that he had engaged in extensive negotiations in Illinois regarding the terms of the partnership agreement with plaintiffs, and it is noted that plaintiffs invested several million dollars in the partnership and that Hoffman and Hoffman Company received substantial fees from the partnership.

The agreement was concluded in February 1982, and made effective as of January 2, 1982. It was executed in Illinois by plaintiffs and the Illinois limited partners and in Florida by Hoffman and the other Florida limited partners. One of the amendments to it was also executed by plaintiffs and the Illinois limited partners in Illinois and by the Florida limited partners in Florida. In accordance with the agreement, the partnership's principal office was located in Illinois, all of its books and records were to be kept there, its principal bank account was maintained in Illinois, and the plaintiffs performed prescribed duties in Illinois.

Following acquisition in March 1982 of The Mandalay Project property, defendants were in constant communication with plaintiffs in Illinois, both by mail and by telephone, regarding the progress and coordination of the project. Disputes, however, quickly arose regarding defendants' alleged failure to meet their obligations under the agreement, and in August 1983 a representative of the Florida limited partners requested a meeting with plaintiffs in Chicago to discuss these problems. Shortly thereafter, several Florida limited partners, including Hoffman, met with plaintiffs at the partnership's Chicago office. When the disputes were not resolved, plaintiffs filed their complaint against defendants seeking damages from both for breaches of the agreement and from Hoffman separately for breach of his fiduciary duty to the partnership. On defendants' motion, the complaint was dismissed for want of personal jurisdiction and this appeal followed.

OPINION

■■ Under section 2—209(a)(1) of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—209(a)(1)), to sustain the exercise of long-arm jurisdiction, plaintiffs here were required to show: (1) that defendants transacted business in Illinois, (2) that their cause of action arose from this transaction of business and (3) that personal jurisdiction was consistent with due process. (See *Jacobs/Kahan & Co. v. Marsh* (7th Cir. 1984), 740 F.2d 587.) In meeting their burden, it is only necessary that there be a *prima facie* showing that jurisdiction exists (*Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 421 N.E.2d 231), and in determining whether there has been such a showing, a

court must accept all undenied well-pleaded allegations in plaintiffs' complaint as true, and resolve all factual disputes in plaintiffs' favor (*Neiman v. Rudolf Wolff & Co.* (7th Cir. 1980), 619 F.2d 1189, *cert. denied* (1980), 449 U.S. 920, 66 L. Ed. 2d 148, 101 S. Ct. 319; *Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 421 N.E.2d 231). Furthermore, since there was no evidentiary hearing on defendants' motion to dismiss, we will independently determine whether defendants' contacts with Illinois are sufficient to subject them to the jurisdiction of the Illinois courts. See *Zeunert v. Quail Ridge Partnership* (1981), 102 Ill. App. 3d 603, 430 N.E.2d 184.

■ In this regard, we note that Hoffman made six trips to Illinois to negotiate the terms of a partnership agreement with plaintiffs which was eventually executed in Illinois by plaintiffs and the Illinois limited partners. This, we believe, was a sufficient *prima facie* showing of the transaction of business in Illinois within the meaning of the Illinois long-arm statute. (See *United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 387 N.E.2d 1272; *American National Bank & Trust Co. v. Hamilton Industries International, Inc.* (N.D. Ill. 1984), 583 F. Supp. 164, *rev'd on other grounds sub nom. Paribas v. Hamilton Industries International, Inc.* (7th Cir. 1985), 767 F.2d 380, and the cases cited therein.) In light of defendants' extensive negotiations in Illinois, it is immaterial that there was other precontract activity conducted outside of this State, *i.e.*, that defendants' executed the partnership agreement in Florida, that the agreement was to be governed by the laws of that State, and that defendants' performance of their obligations under the agreement was required in Florida. (*Jacobs/Kahan & Co. v. Marsh* (7th Cir. 1984), 740 F.2d 587; *Scovill Manufacturing Co. v. Dateline Electric Co.* (7th Cir. 1972), 461 F.2d 897; *Ronco, Inc. v. Plastics, Inc.* (N.D. Ill. 1982), 539 F. Supp. 391.) The focus of our inquiry is not how much activity occurred outside of Illinois, but whether defendants' acts in Illinois constituted sufficient contacts with Illinois to subject them to the jurisdiction of its courts. *Illinois National Bank & Trust Co. v. Gulf States Energy Corp.* (1981), 102 Ill. App. 3d 1113, 429 N.E.2d 1301; *United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 387 N.E.2d 1272.

■ In an attempt to minimize the significance of their partnership negotiations in Illinois, defendants assert that Hoffman came to Chicago only at the specific request of the plaintiffs. The record, however, indicates otherwise. Contradicting the representations made in an earlier affidavit, Hoffman testified at his deposition that he had attempted to form a Mandalay Project partnership with a group of Flor-

ida investors, and when negotiations collapsed in December 1981, he telephoned one of the plaintiffs in Chicago and asked whether a partnership could be formed with his group on the same terms which he had attempted to arrange with the other investors. Hoffman then flew to Chicago to discuss an agreement with plaintiffs. Subsequently he came to Chicago twice to determine the availability of interim construction financing for the project. On each of those occasions, he invited plaintiffs to accompany him to a meeting which he had arranged with a Chicago bank, and while here he also engaged in further negotiations with plaintiffs regarding the terms of a possible partnership. Although plaintiffs did invite Hoffman to Illinois on three other occasions, it is clear that he voluntarily came into Illinois for the purpose of attracting investors and financing for The Mandalay Project. In the absence of any evidence that Hoffman's physical presence in Illinois was obtained by plaintiffs' trickery or "luring" designed solely to create a jurisdictional predicate, it is immaterial that some of his visits to Illinois may have been made at the behest of the plaintiffs. *Jacobs/Kahan & Co. v. Marsh* (7th Cir. 1984), 740 F.2d 587, 592 n.7; *American National Bank & Trust Co. v. Hamilton Industries International, Inc.* (N.D. Ill. 1984), 583 F. Supp. 164, *rev'd on other grounds sub nom. Paribas v. Hamilton Industries International, Inc.* (7th Cir. 1985), 767 F.2d 380.

In addition to the foregoing contacts, defendants, after the agreement was executed, were in constant communication with plaintiffs in Chicago where the partnership's principal office was located and the performance of plaintiffs under the agreement was centered. As a consequence of these contacts, their dealings clearly brought them into direct contact with the State of Illinois (*International Merchandising Associates, Inc. v. Lighting Systems, Inc.* (1978), 64 Ill. App. 3d 346, 380 N.E.2d 1047; *Morton v. Environmental Land Systems, Ltd.* (1977), 55 Ill. App. 3d 369, 370 N.E.2d 1106; *Tatham-Laird & Kudner, Inc. v. Johnny's American Inn, Inc.* (N.D. Ill. 1974), 383 F. Supp. 28), and established the transaction of business requirement for the exercise of long-arm jurisdiction.

Plaintiffs were also required to show that their cause of action arose from defendants' transaction of business in Illinois. (Ill. Rev. Stat. 1981, ch. 110, par. 2—209(c).) This requirement has been liberally construed by the Illinois courts in favor of the party asserting jurisdiction (see *NTN Bearing Corp. of America v. Charles E. Scott, Inc.* (N.D. Ill. 1983), 557 F. Supp. 1273, and the Illinois authorities cited therein), and its purpose is to insure that there is a close relationship between a cause of action against a nonresident defend-

ant and his jurisdictional activities (*Volkswagen Insurance Co. v. Whittington* (1978), 58 Ill. App. 3d 621, 374 N.E.2d 954). However, the statutory phrase "arising from" requires only that plaintiff's claim be one which lies in the wake of the commercial activities by which the defendant submitted himself to the jurisdiction of Illinois courts. *Morton v. Environmental Land Systems, Ltd.* (1977), 55 Ill. App. 3d 369, 370 N.E.2d 1106.

In the instant case, we believe that the allegations in plaintiffs' complaint that defendants breached the agreement and that Hoffman separately breached his fiduciary duty under the agreement clearly "lie in the wake of" defendants' activities in Illinois. *Hyatt International Corp. v. Inversiones Los Jabillos, C.A.* (N.D. Ill. 1982), 558 F. Supp. 932; see also *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.* (7th Cir. 1984), 726 F.2d 1209; *In re Oil Spill by Amoco Cadiz* (7th Cir. 1983), 699 F.2d 909, *cert. denied* (1983), 464 U.S. 864, 78 L. Ed. 2d 172, 104 S. Ct. 196; *Morton v. Environmental Land Systems, Ltd.* (1977), 55 Ill. App. 3d 369, 370 N.E.2d 1106.

The third requisite for long-arm jurisdiction, that it be consistent with due process, requires only that the nonresident defendant have "certain minimum contacts" with the forum State (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154), and this requirement is satisfied if there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State ***." *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240.

In the case at bar, the defendants repeatedly availed themselves of the privilege of conducting business within Illinois. Hoffman made six trips to Illinois to negotiate the agreement with plaintiffs and, in the course of those negotiations, obtained several million dollars from plaintiffs and other Illinois investors. In addition, the agreement provided that the partnership's principal office was to be located in Illinois and that plaintiffs' performance would be centered in Illinois. Defendants thus knew that any breach by defendants of their obligations under the agreement would have direct impact in Illinois. Additionally, the record also discloses that after the agreement was executed, defendants were in continual communication with plaintiffs in Illinois concerning the work required by the agreement and received substantial fees from the partnership which had many Illinois investors, some of whom participated as a result of Hoffman's efforts in Illinois.

In view of these extensive contacts with Illinois, we agree with plaintiffs that there could be "no fairer nor more just result than

to subject defendant[s] to *in personam* jurisdiction in the courts of Illinois and to require [them] to defend [themselves] in this action." (*First National Bank v. Boelcskevy* (1984), 126 Ill. App. 3d 271, 277, 466 N.E.2d 1182, 1187.) As the court stated in *Ronco, Inc. v. Plastics, Inc.* (N.D. Ill. 1982), 539 F. Supp. 391, 400, "it was not unduly inconvenient for [defendants] to come to Illinois when [they] negotiated the instant transaction; it should be no more inconvenient for [them] *** to return now." Moreover, Illinois has a "manifest interest" in providing its residents, as plaintiffs are here, with a convenient forum for redressing injuries allegedly inflicted by out-of-state actors. (See *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174.) In light of the foregoing, it is our view that plaintiffs have shown that the exercise of long-arm jurisdiction in this case comports with the requirements of due process.

For the foregoing reasons, the order dismissing with prejudice plaintiffs' action against defendants for lack of personal jurisdiction is reversed, and the cause is remanded for further proceedings consistent with this order.

Reversed and remanded.

LORENZ and PINCHAM, JJ., concur.