MARY ANN FINNEGAN, as Special Adm'r of the Estate of John Finnegan, Deceased, Plaintiff-Appellant, v. LES POURVOIRIES FORTIER, INC., *et al.*, Defendants-Appellees.—SUSAN LASKY, as Special Adm'r of the Estate of Richard R. Samson, Deceased, Plaintiff-Appellant, v. LES POURVOIRIES FORTIER, INC., *et al.*, Defendants-Appellees.—AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, as Special Adm'r of the Estate of Joseph Sukzda, Deceased, Plaintiff-Appellant, v. LES POURVOIRIES FORTIER, INC., *et al.*, Defendants-Appellees.—GERALDINE KEARNS, as Adm'r of the Estate of Edward Kearns, Jr., Deceased, *et al.*, Plaintiffs-Appellants, v. LES POURVOIRIES FORTIER, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   Nos. 1—88—0370, 1—88—0382, 1—88—0523, 1—88—0553 cons.

Opinion filed September 28, 1990.—Rehearing denied November 16, 1990.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Kenneth C. Miller, and Joy L. Sparling, of counsel), for appellant Robert J. Langkamp.

Arvey, Hodes, Costello & Burman, of Chicago (George L. Grumley, Rosemarie J. Guadnolo, and Thomas F. Sax, of counsel), for appellant Geraldine Kearns.

John J. Kennelly, of Chicago (Joseph A. Bosco and Kevin M. Forde, of counsel), for other appellants.

Haskel & Perrin, of Chicago (Donald M. Haskell, Michael J. Sehr, and Andrew Kochanowski, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

These consolidated appeals arise from an airplane crash on September 30, 1985, in Quebec, Canada, in which all persons aboard perished, including the pilot and six Illinois residents. The appeals are taken from the dismissal of the actions for damages brought by the estates of four of the deceased Illinoisans.

At the time of the accident, the victims were en route from a caribou hunting trip in northern Quebec to the airport in Schefferville, Quebec. Plaintiffs filed wrongful death actions in circuit court against Les Pourvoiries Fortier, Inc. (Fortier, Inc.), as owner and operator of the aircraft, alleging negligence in its operation and maintenance. The complaints also alleged that Wyco Enterprises of Illinois, Inc. (Wyco), and Sheila Wyer (Mrs. Wyer), as administrator of the estate of Joseph T. Wyer (Wyer), deceased, were negligent in the planning and handling of the trip of plaintiffs' decedents. Mrs. Wyer cross-claimed in the other plaintiffs' suits against Fortier, Inc., for the wrongful death of her husband.

Fortier, Inc., filed a special and limited appearance and a motion to quash service and dismiss, claiming that the service of process on it was improper and that the court lacked *in personam* jurisdiction. The circuit court granted defendant's motion, and dismissed plaintiffs' complaints; the court later certified its order pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), and plaintiffs filed timely notices of appeal.

The following issues are presented for our review: (1) whether the circuit court correctly determined that defendant was not present or

"doing business" in Illinois through Wyer and Wyco and therefore is not subject to the *in personam* jurisdiction of Illinois courts under the "doing business" doctrine; (2) whether the circuit court correctly determined that defendant is not subject to the *in personam* jurisdiction of Illinois courts under the Illinois "long-arm statute" (Ill. Rev. Stat. 1989, ch. 110, par. 2—209(a)(1)); and (3) whether the circuit court properly quashed service of process. We affirm.

In support of its motion to quash service of process and to dismiss, defendant filed two affidavits of Albert Fortier (Fortier), owner and manager of Fortier, Inc. In response, plaintiffs filed two affidavits and the deposition of Joseph Bartuch (Bartuch), an affidavit of Mrs. Wyer and documentary evidence consisting in large part of correspondence between defendant and Wyco. With the exception of three factual inconsistencies which will be addressed later, the facts are not in dispute.

Fortier, Inc., was a Canadian corporation which owned and operated Wedge Hills Lodge, a small hunting and fishing facility near Schefferville, Quebec, about 150 miles northwest of Montreal, in a subarctic, French-speaking region of Canada. The company organized seasonal fishing and hunting expeditions, providing transportation for parties on a Beech-18 airplane from Schefferville to the lodge, which is nearly inaccessible by other means. Fortier, a French-Canadian, owned and managed the business.

Wyco was an Illinois corporation which specialized in the outdoors sporting business. Before the fatal crash, its only employee and sole shareholder was Wyer, a Chicago-area professional outdoors sportsman. Wyer produced and hosted a half-hour television hunting and fishing program called the "Outdoors Sportsman," which aired regularly from 1978 to 1985 on channel 26 in Chicago. He sold time for commercials advertising a variety of outdoors-related products, services and lodges. To gather material for the program, Wyer would visit various hunting lodges in northern United States and Canada, and was generally paid a commission by them if he brought back a group of hunters.

Wyer first contacted Fortier when he and Bartuch, a photographer, travelled to Wedge Hills Lodge for a week in August 1984 to make a videotape for Wyer's television show. During their stay, Wyer and Bartuch had a total of four conversations with Fortier, who participated through an unidentified French-English translator.

One of the conversations concerned Wyer's bringing his clients to the lodge in the next caribou hunting season. He asked Fortier about the number of people the lodge could accommodate and specific avail-

able hunting dates; they also discussed Fortier's prices. Fortier said he would give Wyer a 15% finder's fee for any hunters Wyer would bring to the lodge. The conversation concluded with an understanding that Fortier would provide Wyer with available dates that Wyer would pass along to his clients for a caribou hunt at the lodge in the fall of 1985. During the course of other conversations, Wyer told Fortier about the television coverage the lodge would get on Wyer's show. Nothing that came of this meeting was reduced to writing.

Between October 1984, when Wyer first visited Wedge Hills Lodge, and September 1985, when Wyer returned to the lodge with a group of hunters, Wyer and Fortier exchanged seven letters and several telephone calls. In the first letter, dated October 17, 1984, Wyer thanked Fortier for the opportunity to film at Fortier's lodge. In response to a telephone call from Wyer, on October 31, 1984, the lodge's secretary confirmed by letter Wyer's bookings for several persons for a week's stay at the lodge on three separate hunting dates. The third correspondence was a letter from Wyer to Fortier on January 29, 1985, in which Wyer provided a list of prospective clients for the September 1985 expedition and a deposit on behalf of his group in the form of a check drawn on a bank in London, Ontario, where Wyer had previously opened an account. This letter also mentioned that Wyer's television show featured film footage of the lodge and that a videotape was being sent to Fortier. In the fourth letter, on February 12, 1985, Fortier acknowledged receipt of the deposit and confirmed Wyer's reservations. In response to a call from Wyer, on July 2, 1985, the lodge's secretary sent Wyer the names of two Canadian hunters with whom Wyer had hunted at the lodge. In a sixth letter, on July 31, 1985, Wyer sent Fortier a check for $23,000 Canadian as a further downpayment for the impending hunting trips. Fortier had scheduled 10 hunters, including Wyer, for September 23, 1985, and 12 hunters for September 25, 1985. Wyer's letter indicated that he did not intend to pay for his own trip. However, in the seventh letter, on August 6, 1985, the lodge's secretary made it clear to Wyer, in behalf of Fortier, that since Wyer was being paid a 15% commission, he would have to pay for his own trip. Wyer later did so. A check dated September 24, 1985, for $6,900 Canadian represented the balance owed Fortier. Again, the check was drawn on Wyer's account at the London, Ontario, bank.

The fee of $2,000 Canadian per hunter charged by Fortier did not include transportation to and from Schefferville. Wyer charged each of his clients $2,100 for the same package. Wyer made all of the necessary travel arrangements for his clients from Chicago to Scheffer-

ville and back.

After his initial visit to Wedge Hills Lodge, Wyer engaged in various activities in Illinois relating to Fortier, Inc. At a booth he sponsored at the Outdoors Show in Chicago in February 1985, Wyer distributed some promotional literature he had received from Fortier describing the lodge and prices. A Wyco brochure entitled "Hunting" advertised five different tours that Wyer planned in 1985, including the trip to Wedge Hills Lodge. A Wyco brochure entitled "Trophy Caribou Black Bear Ptarmigan" described the lodge and gave a tour price including air fares from Chicago. Bartuch testified as to an "informational" commercial advertising Wedge Hills Lodge which aired an unknown number of times on Wyer's television show. The commercial stated that Wyer and Wedge Hills Lodge had "joined forces" to provide the hunting package. However, in his affidavit Fortier stated that he had neither authorized nor paid for that commercial. Finally, Wyer made all of the travel arrangements for himself and his clients for the September 1985 tours. It was on one of these tours that the airplane crash giving rise to this litigation occurred.

The activities of Fortier, Inc., are almost exclusively centered in Canada. All of the company's promotional literature listed only a Canadian telephone number. Its only place of business was in Quebec, Canada. Fortier, Inc., was incorporated in Quebec and performed transportation services for its clients solely within Quebec. Fortier, Inc., also engaged in the business of fish and game outfitting in Quebec. None of its goods had ever been sold in Illinois. The company had never been incorporated or registered in Illinois and did not have a designated agent for service of process in this State. Furthermore, Fortier, Inc., did not maintain an Illinois telephone listing, operate a sales representative or office here, and had never sent an employee to this State for the purpose of transacting or promoting business. Fortier, Inc., did, however, advertise in three nationally distributed American sports magazines, published in Ohio, New York and Oregon, which are available in Illinois. The classified advertisements listed a contact number in Quebec.

As defendant points out in its brief, three factual discrepancies exist in the documentation which the circuit court considered in ruling on its motion to quash and dismiss. First, some plaintiffs allege that Wyer made not two, but three trips to Wedge Hills Lodge, the first being in early summer 1984. Defendant maintains that Wyer made only two trips, one in August 1984 and the other in September 1985. Second, Bartuch's deposition testimony stated that Fortier asked Wyer to be his agent and representative and Wyer agreed. By way of

a sworn affidavit, Fortier denied ever creating any agency relationship between himself and Wyer. Finally, Bartuch's deposition and affidavit stated that Fortier authorized the television commercial advertising his lodge on Wyer's show. Fortier's affidavit stated that he never authorized the commercial nor knew anything about it until after it was aired. Whether Wyer made a total of two or three trips is not relevant to the resolution of this appeal; however, since plaintiffs forcefully urge agency and ratification before this court, we will address those issues in due course.

## I. THE BURDEN OF PROOF

In *Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 247-48, 421 N.E.2d 231, 234-35, the appellate court set forth the relative burdens of the parties in a jurisdictional dispute as follows:

"The burden of establishing personal jurisdiction rests with the party asserting the existence of jurisdiction. [Citations.] The essential inquiry on this appeal is whether plaintiff has met his burden of establishing that defendant submitted himself to the jurisdiction of the courts of Illinois.

A party asserting jurisdiction meets its burden by making a *prima facie* showing that jurisdiction is conferred by the long-arm statute. [Citations.] In considering a challenge to its personal jurisdiction, a court may receive and weigh affidavits, and such conflicts as do exist in the affidavits and pleadings must be resolved in plaintiff's favor for purposes of determining whether a *prima facie* case for *in personam* jurisdiction has been established. [Citations.] However, where well-alleged facts within an affidavit are not contradicted by counteraffidavit, they must be taken as true notwithstanding the existence of contrary averments in the adverse party's pleadings. [Citation.] If a defendant's affidavit contesting jurisdiction is not refuted by a counteraffidavit filed by the plaintiff, the facts alleged in the defendant's affidavit are accepted as true."

*Kutner* is the seminal decision in a long line of Illinois cases requiring the party asserting jurisdiction to state only a *prima facie* case in order to prevail. See *Wiles v. Morita Iron Works Co.* (1987), 152 Ill. App. 3d 782, 504 N.E.2d 942, *rev'd on other grounds* (1988), 125 Ill. 2d 144, 530 N.E.2d 1382; *Gordon v. Tow* (1986), 148 Ill. App. 3d 275, 498 N.E.2d 718; *Mandalay Associates, Ltd. v. Hoffman* (1986), 141 Ill. App. 3d 891, 491 N.E.2d 39; *Professional Group Travel, Ltd. v. Professional Seminar Consultants, Inc.* (1985), 136 Ill. App. 3d 1084, 483 N.E.2d 1291; *Financial Management Services, Inc. v. Sibilsky &*

*Sibilsky, Inc.* (1985), 130 Ill. App. 3d 826, 474 N.E.2d 1297; 3 R. Michael, Illinois Practice §6.2, at 61 & n.14 (1989) (hereinafter 3 R. Michael).

■ As Professor Michael points out, *Kutner* cites only Federal precedent for the proposition that any factual conflicts in the pleadings and affidavits must be resolved in the plaintiff's favor. (See *Met-L-Wood Corp. v. Lifetime Pools, Inc.* (N.D. Ill. 1979), 475 F. Supp. 149, 151; *Wessel Co. v. Yoffee & Beitman Management Corp.* (N.D. Ill. 1978), 457 F. Supp. 939, 940. *Cf. Doolin v. K-S Telegage Co.* (1979), 75 Ill. App. 3d 25, 29, 393 N.E.2d 556, 559 ("defendants' affidavit will be determinative of the motion only if it negates the facts upon which the plaintiff bases jurisdiction because otherwise, the defendant has not effectively controverted plaintiff's prima facie showing that the defendant has submitted to the jurisdiction of Illinois").) The cases following *Kutner* cite Federal precedent and each other. According to Professor Michael, "[t]he federal cases, however, are clearly inapplicable because of a difference in federal procedure." (3 R. Michael, §6.2, at 61.) Whereas in the Federal sector the issue of personal jurisdiction is addressed preliminarily before trial, then fully litigated on the merits during trial (see *O'Hare International Bank v. Hampton* (7th Cir. 1971), 437 F.2d 1173, 1177 n.2), in Illinois, the special appearance (Ill. Rev. Stat. 1989, ch. 110, par. 2—301) is a defendant's "sole opportunity to defeat the jurisdiction of the court." (3 R. Michael, §6.2 at 61.) We agree with Professor Michael's observation:

> "To extend [the Federal] rule to Illinois *** is, at best, to reverse the burden of proof, and at worst [to] deprive the defendant of the constitutional right to due process of law by holding 'the defendant subject to jurisdiction whenever there is a conflict in the evidence without resolving that conflict." (3 R. Michael, §6.2 at 61.)

We hold, therefore, that the party asserting *in personam* jurisdiction has the burden to establish such jurisdiction where it is challenged (*R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 489 N.E.2d 1360) by a preponderance of the evidence. Accordingly, a reviewing court may not disturb the trial court's findings unless they are against the manifest weight of the evidence.

## II. DEFENDANT'S AMENABILITY TO SUIT IN ILLINOIS

In its motion to dismiss, defendant contested jurisdiction only on the ground that it was not "doing business" in Illinois and was therefore not amenable to the jurisdiction of our courts pursuant to section 2—204 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110,

par. 2—204); however, further filings and arguments of the parties before the trial court also addressed the issue of whether defendant became subject to Illinois' jurisdiction by "transacting business" in the State, pursuant to the Illinois "long-arm statute," codified in sections 2—208 and 2—209 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, pars. 2—208, 2—209). Thus we will consider both bases of *in personam* jurisdiction in determining whether the trial court properly dismissed plaintiffs' complaints.

■ In *Chandler Leasing Co. v. Trus Joist Corp.* (1980), 90 Ill. App. 3d 875, 878, 414 N.E.2d 15, the court explained the difference between the two bases of jurisdiction as follows:

" 'The distinction between the "present and doing business theory" and the "transaction of business" theory is that under the former a corporation that engages in a continuous and systematic course of business in the State becomes subject to the State's jurisdiction even though the subject lawsuit may have no relationship to the business that the corporation does within the State. Under the latter theory, if the corporation transacts any business within the State and a cause of action arises from that transaction then the State has jurisdiction.' " 90 Ill. App. 3d at 878, quoting *Braband v. Beech Aircraft Corp.* (1977), 51 Ill. App. 3d 296, 298, 367 N.E.2d 118, 120, *aff'd* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, *cert. denied* (1979), 442 U.S. 928, 61 L. Ed. 2d 296, 99 S. Ct. 2857.

A

■ Plaintiffs maintain that Illinois has *in personam* jurisdiction over Fortier, Inc., under the "doing business" doctrine, because defendant was both present and doing business in Illinois through Wyer and Wyco.

There is no comprehensive test for determining whether an alien corporation is "doing business" in the forum State. (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847.) The term means generally that "the corporation is conducting business in Illinois 'of such a character and extent as to warrant the inference that the corporation has subjected itself to the jurisdiction and law of the district in which it is served.' " (*Cook*, 87 Ill. 2d at 201, 429 N.E.2d at 852, quoting *Pembleton v. Illinois Commercial Men's Association* (1919), 289 Ill. 99, 104.) This standard requires that the corporation be engaged in a "regularity of activity" amounting to more than "isolated or sporadic" operations. (*Cook*, 87 Ill. 2d at 202, 429 N.E.2d at 853.) In the words of Chief Judge Cardozo (he was then sit-

ting in the New York Court of Appeals), "doing business" for jurisdictional purposes means carrying on business activity within a State " 'not occasionally or casually, but with a fair measure of permanence and continuity.' " (*Cook*, 87 Ill. 2d at 202-03, 429 N.E.2d at 853, quoting *Tauza v. Susquehanna Coal Co.* (1917), 220 N.Y. 259, 267, 115 N.E. 915, 917.) Mere solicitation by employees whose only authority is to solicit business in Illinois is not enough; although, logically, this rule does not apply where the defendant's activity is something more than that. (*Cook*, 87 Ill. 2d at 201-02, 429 N.E.2d at 852-53 (and cases cited therein).) As characterized by this court, the doing business standard is "quite high." *Natural Gas Pipeline Co. v. Mobil Rocky Mountain, Inc.* (1987), 155 Ill. App. 3d 841, 843, 508 N.E.2d 211, 212.

■ Defendant's activity in Illinois was far from regular, continuous or fairly permanent. At most, Fortier, Inc., engaged in the solicitation of business in the State by permitting Wyer to engage hunters for its caribou hunting trip. Wyer solicited the business of the prospective hunters by promoting the trip on his television show and distributing promotional literature which described Wedge Hills Lodge and listed tour prices. Once the Illinois hunters agreed to go on the hunting trip, Wyer collected their fees, paid Fortier his portion through a bank in London, Ontario, made round-trip travel arrangements for the Chicago-Schefferville leg of the trip and called a meeting in Illinois to brief the hunters on the mechanics or the practical aspects of the excursion. Apart from Wyer's activities, however, Fortier's only connection to Illinois was a handful of mailings of promotional literature to Illinois residents interested in Wedge Hills Lodge, a letter accepting the reservations of an Illinois resident travelling to the lodge and advertisements in three national sporting magazines available in Illinois.

Plaintiffs claim that the "mere solicitation" rule should not apply in this case, because Wyer did more than merely solicit the Illinois residents' patronage by actually booking their trips, making travel arrangements to and from Schefferville, conducting an orientation meeting and acting as their "tour guide" on the September 25 trip. We find it difficult to attribute these activities to defendant, however, because none of them was contemplated by Wyer and Fortier when they discussed the details of the September hunting trips at the lodge. Their agreement was that Wyer would get a 15% commission for each hunter he brought to the lodge, subject to Fortier's approval. Fortier did not concern himself with the manner in which Wyer would earn his commission. Wyer, in turn, capitalized on the arrangement by charging each hunter $2,100 American and remitting to Fortier only

the fee of $2,000 Canadian, minus his 15% commission. Significantly, Fortier required Wyer to pay for his own trip, in spite of Wyer's offer to go gratis as a "guide."

Defendant draws our attention to *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847, in which the supreme court found that a company was not doing business in Illinois by exhibiting its wares at three trade shows and conducting an Illinois interview of a prospective employee selected by the plaintiff employment agency, whose offices were in Chicago. According to the court, the defendant did not conduct business in Illinois with sufficient "regularity" to indicate either consent or constructive presence. The court also held that where a corporation is not found to be doing business in this State, even personal service upon a visiting corporate officer is not sufficient to confer jurisdiction.

The activity of Fortier, Inc., in Illinois can hardly be viewed as "regular" or "systematic." Defendant's relationship with Wyer focused on soliciting hunters for only two hunting trips, both in September 1985, including the one which ended in the plane crash in Schefferville. Moreover, defendant's independent Illinois activities were no more than casual and sporadic contacts with Illinois residents, unlike those in *Aigner v. Bell Helicopters, Inc.* (N.D. Ill. 1980), 86 F.R.D. 532, 538, where the facts showed defendant had engaged in "rather extensive advertising and solicitation efforts in this forum" over several years. Plaintiffs' contention that Wyer and Fortier contemplated an expanded future business relationship is irrelevant.

Defendant also advances the case of *Radosta v. Devil's Head Ski Lodge* (1988), 172 Ill. App. 3d 289, 526 N.E.2d 561, which, on facts very similar to ours, found that the defendant corporation was not "doing business" in Illinois. *Radosta* concerned an Illinois resident who had sustained an injury while participating in a ski race at the Devil's Head Ski Lodge in Wisconsin. The race was sponsored by World Wide Ski Corporation, headquartered in Colorado, and was hosted by Devil's Head, the operator of the lodge, whose principal place of business was in Wisconsin. Neither corporation was registered in Illinois, where the plaintiff filed suit. Service was obtained on World Wide in Colorado and on Devil's Head in Wisconsin and Rosemont, Illinois, where its vice-president was attending a ski show.

Radosta claimed that Devil's Head was doing business in Illinois based on the following five contacts: (1) Devil's Head advertised in Illinois; (2) Devil's Head maintained an Illinois telephone number; (3) Devil's Head sold its lodging and lift tickets through a Chicago business; (4) Devil's Head contracted with an Illinois business for sign ad-

vertising; and (5) Devil's Head sponsored a booth in Chicago's annual ski show.

We agree with defendant that its activities in Illinois were both quantitatively and qualitatively less impressive for our purposes than those of Devil's Head. Based on *Cook, Radosta* and other decisions declining to find jurisdiction over an alien corporation on the basis of its "doing business" in this State (see, *e.g., Berks v. Rib Mountain Ski Corp.* (N.D. Ill. 1983), 571 F. Supp. 500; *Natural Gas Pipeline Co.,* 155 Ill. App. 3d 841, 508 N.E.2d 211; *Loggans v. Jewish Community Center* (1983), 113 Ill. App. 3d 549, 447 N.E.2d 919; *Chandler Leasing Co.,* 90 Ill. App. 3d 875, 414 N.E.2d 15), we hold that the evidence in the present case fails to show that defendant's commercial activities in Illinois were sufficiently substantial to sustain *in personam* jurisdiction under the "doing business" doctrine.

Plaintiffs also contend that Wyer and Wyco were defendant's "agents" in Illinois, thus making Fortier, Inc., amenable to process in this State under section 2—204 of the Code of Civil Procedure. That section implements jurisdiction based on the actual or constructive presence of a corporation in Illinois and provides in pertinent part as follows:

> "A private corporation may be served (1) by leaving a copy of the process with its registered agent or any officer or agent of said corporation found anywhere in the State." (Ill. Rev. Stat. 1989, ch. 110, par. 2—204.)

In the present case, Wyer and Wyco were neither registered agents nor officers of Fortier, Inc. Thus, unless they were defendant's "agents," jurisdiction premised on defendant's doing of business in Illinois through Wyer and Wyco is improper.

Plaintiffs adduce various facts established through the deposition testimony and affidavits of Bartuch and Mrs. Wyer in an attempt to show that an agency relationship indeed existed between Fortier and Fortier, Inc., as Canadian principals and Wyer and Wyco as their Illinois agents. For example, plaintiffs forcefully claim that during the videotaping trip to Wedge Hills Lodge, Bartuch participated in a conversation with Fortier and Wyer in which Fortier asked Wyer through a translator whether Wyer would be his "agent" or "representative," and Wyer agreed. On defendant's motion to strike Bartuch's affidavit, however, the circuit court ruled such evidence to be conclusional and hearsay. In his second affidavit, Fortier stated that he never made such an offer. Plaintiffs further argue that by keeping silent in response to his knowledge that Wyer was engaging hunters for the trip to Wedge Hills Lodge and that Wyer was airing commercials and

other footage from the lodge on his television show, in which Wyer stated that he and Fortier had "joined forces," Fortier ratified Wyer's actions. Again, Fortier denied any knowledge of commercials advertising the excursion, creating a factual conflict on this issue.

Although in its memorandum opinion the trial court made no express finding with respect to the existence of such an agency relationship, its determination that there was no relationship can reasonably be inferred from the court's decision to quash service of process in Illinois on Wyco and Mrs. Wyer, as administrator of Wyer's estate.

It is universally held that the existence of an agency relationship is a question of fact; accordingly, in the absence of an explicit finding in that regard by the trial court, it is not our function to resolve the issue on appeal. More important, in view of our holding that defendant's commercial activities in Illinois were not substantial enough to constitute "doing business," a determination of the question of whether Wyer and Wyco were indeed defendant's agents becomes unnecessary.

Finally, plaintiffs assert that the trial court erroneously failed to consider the fact that Illinois is the only forum in which they can sue. (See *Aigner*, 86 F.R.D. at 538-39.) They claim that the plaintiffs' decedents were all Illinois residents, as are their heirs, and that no other State would conceivably have jurisdiction over defendant. Furthermore, they maintain that filing suit in Quebec, Canada, is not a viable alternative, because there "they would have to make large deposits to cover defense fees and expenses and could not employ lawyers on a contingent basis. In addition, they would thereby accede to the jurisdiction of the Canadian courts with respect to the declaratory judgment suit filed by Fortier, Inc.'s British insurer *** in which this insurer seeks to avoid coverage." In *Aigner*, the district court found that requiring the defendant alien corporation, which had done "more than occasional business in this country" and had "voluntarily, intentionally and successfully come into the United States to do business with this country's residents," to defend itself in the Northern District of Illinois would be neither unreasonable nor "markedly unfair." 86 F.R.D. at 538, 539.

Since we hold that Illinois has no *in personam* jurisdiction over Fortier, Inc., under the "doing business" doctrine, this is another issue we need not reach. See *Natural Gas Pipeline Co.*, 155 Ill. App. 3d at 847, 508 N.E.2d at 215.

In any event, we do not deem that the inconvenience of suing in Canada does not *ipso facto* render Illinois the "only available forum." Besides, the relative interests of the parties and the forum State are

proper inquiries only when addressing the issue of whether requiring an alien corporation to defend itself in Illinois "would be so unfair as to constitute a denial of due process." *Aigner*, 86 F.R.D. at 539.

## B

■ Plaintiffs contend next that personal jurisdiction over Fortier, Inc., is proper under the Illinois "long-arm statute" (Ill. Rev. Stat. 1989, ch. 110, par. 2—209(a)(1)), which provides in relevant part as follows:

> "(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action *arising from* the doing of any of such acts:
>
> (1) *The transaction of any business* within this State." (Emphasis added.)

In *Gordon v. Tow* (1986), 148 Ill. App. 3d 275, 281, 498 N.E.2d 718, 722, the appellate court ruled that defendant's Illinois activities did not amount to the "transaction of any business" under our long-arm statute, because (1) plaintiff initiated the transaction outside Illinois, (2) the limited partnership agreement was entered into outside Illinois, and (3) the contract terms were to be performed outside of Illinois. Considering these criteria, the court concluded that despite many telephone calls and a "continuous pattern of correspondence" between the parties relating to plaintiff Gordon's purchase of a limited partnership from Tow, a Rhode Island resident, Tow had not "transacted business" in Illinois under the statute.

■ In the present case, Wyer initiated discussion of the hunting trip with defendant outside Illinois. It was Wyer who travelled to Fortier's place of business in Quebec and made inquiries about lodging, prices and available dates for a hunting excursion to Wedge Hills Lodge. Wyer made such inquiries during his tours of other hunting and fishing facilities on a regular basis with the hope of entering into an agreement for a commission in exchange for booking hunting and fishing parties.

Fortier's agreement with Wyer to provide Wyer and his clients with a week of caribou hunting at Wedge Hills Lodge was entered into outside Illinois; the entire agreement was negotiated at the lodge in Quebec, and, as noted earlier, no part of it was ever reduced to writing. The correspondence between Wyer and Fortier merely indicates that Wyer had agreed to provide Fortier with a list of hunters

for a hunting expedition on a date picked by Fortier and later to pay for the confirmed parties.

The agreement was performed exclusively outside Illinois. Wyer paid Fortier on behalf of each party only for that portion of the hunting package which was to take place in Quebec. The payment checks were in Canadian dollars, drawn on Wyer's account in a London, Ontario, bank. Wyer arranged transportation for his clients to Schefferville, Quebec, at which point Fortier took over. Fortier's promotional literature which Wyer distributed in Illinois states clearly that transportation to Schefferville is not included in the fee.

Finally, as in *Gordon*, the telephone calls and correspondence between Wyer and Fortier are insufficient to establish the transaction of business within this State, especially in view of the fact that most of the communication was either initiated by Wyer or in response to Wyer's inquiries. The *Gordon* court also held that "[o]nly the acts of the defendant can be considered in determining whether business was transacted in Illinois. [Citations.]" (148 Ill. App. 3d at 280, 498 N.E.2d at 722.) The only relevant act of Fortier was his agreement to provide a week of caribou hunting for Wyer's clients and to pay Wyer a commission for each hunter he brought to the lodge. This agreement did not require that the clients be Illinois residents. Consequently, it cannot be said that defendant Fortier, Inc., "sufficiently transacted business in Illinois so as to avail [itself] of the benefits of Illinois law." 148 Ill. App. 3d at 280, 498 N.E.2d at 722.

■ The second part of the analysis under the long-arm statute requires plaintiffs to show that the cause of action "arose from" defendant's jurisdictional acts. (Ill. Rev. Stat. 1989, ch. 110, par. 2— 209; *Heller Financial, Inc. v. Conagra, Inc.* (1988), 166 Ill. App. 3d 1, 4, 520 N.E.2d 922, 924.) Illinois courts are especially disinclined to assert jurisdiction over nonresident defendants for torts occurring outside the State, where the tort did not arise from defendant's in-forum contacts which began a chain of events leading to plaintiff's out-of-forum visit and subsequent injury. (*Loggans v. Jewish Community Center* (1983), 113 Ill. App. 3d 549, 447 N.E.2d 919.) Although our courts have often used the phrase "lies in the wake" of the transaction to help define the term "arising from" as it is used in the long-arm statute (see, *e.g., Loggans*, 113 Ill. App. 3d at 557, 447 N.E.2d at 925), we do not interpret such language as creating a pure "but for" test of causality. (*Cf. Shute v. Carnival Cruise Lines* (9th Cir. 1990), 897 F.2d 377, 383-86 (holding that plaintiff's claim of negligence against a Florida corporation predicated on her slip and fall on a cruise ship operated by the company off the coast of California

"arose out of" the alien corporation's solicitation of business in the State of Washington).) In the present case, plaintiffs' complaints charge that Fortier, Inc., is liable for the wrongful death of plaintiffs' decedents by reason of its negligent operation and maintenance of the aircraft. Had there been any proximate connection between the alleged tort and the State of Illinois—for example, had defendant hired the pilot from Illinois or engaged an Illinois company to maintain the aircraft—plaintiffs' arguments would offer some persuasion. Plaintiffs' inclusion in the complaints of the allegation that Wyer and Wyco were negligent in their planning and handling of the fatal hunting trip is a woefully inadequate attempt at creating personal jurisdiction where none otherwise exists, for nothing in the record even remotely suggests that either Wyer or Wyco engaged in any negligent conduct causing the crash.

■ A "close relationship" must exist between the cause of action and the jurisdictional acts of a nonresident defendant. (*Volkswagen Insurance Co. v. Whittington* (1978), 58 Ill. App. 3d 621, 374 N.E.2d 954.) The "jurisdictional acts" of Fortier, Inc., consisted of allowing Wyer to book clients for two caribou hunting trips to Fortier's lodge in exchange for a 15% commission. As previously noted, the agreement did not contemplate that the clients must be from Illinois. In fact, 3 of the 12 hunters on the fatal trip were not Illinois residents. In light of the record, we do not perceive that there exists a sufficiently close relationship between these acts and the airplane crash on September 25, 1985, to warrant subjecting defendant to the jurisdiction of Illinois courts.

Defendant maintains that the contacts of Fortier, Inc., with Illinois were insufficient to meet even the constitutional limits of *in personam* jurisdiction set forth in *Helicopteros Nacionales de Colombia, S.A. v. Hall* (1984), 466 U.S. 408, 80 L. Ed. 2d 404, 104 S. Ct. 1868, and *Asahi Metal Industry Co. v. Superior Court* (1987), 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026. Since we hold that Illinois has no personal jurisdiction over defendant under our long-arm statute, we need not also decide whether plaintiffs' assertion of jurisdiction is consistent with due process. *R.W. Sawant & Co. v. Allied Programs, Corp.* (1986), 111 Ill. 2d 304, 498 N.E.2d 1360; *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847; *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 427 N.E.2d 1203.

### III. SERVICE OF PROCESS

Plaintiffs also contend that the trial judge improperly granted

defendant's motion to quash service of process in view of the fact that personal service had been obtained on Fortier in Schefferville, Quebec. The record reflects that Wyco and Mrs. Wyer, as the administrator of Wyer's estate, were served with process in Warrenville, Illinois, in their capacity as agents of Fortier, Inc. Also, a corporate officer of Fortier, Inc., was personally served with summons in Quebec City, Quebec. Defendant then filed its motion to quash service of process and to dismiss plaintiffs' complaints for lack of personal jurisdiction. After this motion was filed, plaintiff Kearns obtained personal service upon Fortier, as manager and owner of the company, in Schefferville, Quebec, and upon the company's trustee in bankruptcy in Quebec City, Quebec.

Defendant did not amend its motion to include this latter method of service upon Fortier. In fact, the parties agree that one of defendant's attorneys sent a letter to one of plaintiffs' attorneys indicating that at the time of the hearing defendant would withdraw the notice issue from its motion in light of the fact that personal service had been effected upon Fortier. At the hearing on the motion to quash and dismiss, however, defense counsel remained silent on the issue of waiver; consequently, it was plaintiffs' counsel who advised the trial judge that Fortier had been personally served and about the existence and contents of the letter. Defense counsel explained that the attorney who allegedly drafted the letter was no longer with the firm. Despite acknowledging the personal service upon Fortier, the trial judge granted defendant's motion to quash service of process.

During the hearing to vacate the circuit court's order to quash and dismiss, defendant expressly waived the service issue; however, the court refused to change its decision. Defendant stands on its waiver on appeal.

Plaintiffs now argue that (1) the court improperly granted defendant's motion to quash, because service had been perfected during its pendency, and (2) by granting the motion, the court lost subject matter jurisdiction over the litigation and therefore improperly reached the issue of *in personam* jurisdiction (see *Giralamo v. O'Connell* (1986), 145 Ill. App. 3d 527, 495 N.E.2d 1180 (absent proper service, any subsequent orders of court against defendant are void); *LaMotte v. Constantine* (1980), 92 Ill. App. 3d 216, 416 N.E.2d 23 (court acquires jurisdiction only after proper service of summons)).

■■ In its memorandum opinion and order, the circuit court addressed first the issue of whether it had a basis for asserting personal jurisdiction over defendant, and only then addressed the question of whether defendant had been properly notified of the pendency

of the action against him. This is the proper sequence for dealing with issues of *in personam* jurisdiction. (See, *e.g., International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154; see also Ill. Ann. Stat. 1983, ch. 110, par. 2—209 Historical and Practice Notes at 215 (Smith-Hurd 1983).) Accordingly, once a court decides that it has no basis for asserting personal jurisdiction over a defendant, the question of whether service of process was properly effected becomes moot. Thus, since we affirm the circuit court's order dismissing the cause of action for lack of jurisdiction over defendant's person, we do not reach the issue of whether defendant was properly served.

We also hold that because Fortier was personally served in Canada only after defendant filed its motion to quash, this method of service was not affected by the court's order granting the motion. Accordingly, at least with respect to plaintiffs' attempt to show proper long-arm jurisdiction over defendant, the circuit court never found notice to be inadequate.

Affirmed.

DiVITO, P.J., and HARTMAN, J., concur.