STITCH-TEC COMPANY, INC., Plaintiff-Appellee, v. ROYAL BANKS OF MISSOURI, Defendant-Appellant.

Fifth District   No. 5—97—1011

Opinion filed February 10, 1999.

Sam S. Pessin, of Pessin, Baird & Wells, of Belleville, for appellant.

Kevin J. Stine, of Mathis, Marifian, Richter & Grandy, Ltd., of Belleville, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Royal Banks of Missouri, appeals from an order of the circuit court of Washington County denying defendant's motion to dismiss the complaint of plaintiff, Stitch-Tec Company, Inc., for lack of jurisdiction. The issues raised on appeal are (1) whether defendant had sufficient minimum contacts within Illinois to satisfy due process and establish *in personam* jurisdiction, (2) whether the trial court erred in finding that the requirements of section 2—209 of the Civil Practice Law (the long-arm statute) (735 ILCS 5/2—209 (West 1996)) were met, and (3) whether the trial court's decision is against the manifest weight of the evidence. We affirm.

## BACKGROUND

Plaintiff is a Florida corporation with its principal place of business in Nashville, Illinois. Defendant is a Missouri corporation that does not have any offices in Illinois. Plaintiff's plan was to obtain financing to acquire land and construct a 180,000-square-foot warehouse in St. Louis, Missouri. Ultimately, a deal was negotiated whereby defendant would loan plaintiff in excess of $3 million to complete the project. A loan commitment was executed on May 26, 1995, between the parties in Nashville. At the time the loan commitments were executed, plaintiff delivered a check in the amount of

$23,156, which was allegedly half the loan commitment fee. Pursuant to the terms and conditions of the loan commitment, the loan was to close within 60 days. If the loan did not close within that time, plaintiff was required to pay loan and attorney fees to the extent *earned* by defendant. Plaintiff refused to close on the loan within the 60-day time period or within an extension granted by defendant. Thereafter, on July 25, 1997, plaintiff filed suit to recover $22,311, plus court costs and prejudgment interest. This amount represents the $23,156 loan commitment fee, minus legal fees of $825 and $20 for a flood letter. Defendant filed a special appearance and motion to quash pursuant to Supreme Court Rule 306(a)(3) (166 Ill. 2d R. 306(a)(3)), alleging that it did nothing to subject itself to the jurisdiction of Illinois courts.

In support of its motion to quash summons and dismiss, defendant filed the letter of commitment on the $3,705,000 loan, correspondence between defendant's authorized agent, John Belgeri, a vice president at the bank, and H.J. Jones, plaintiff's president, and correspondence between plaintiff's attorney, Kevin J. Stine, and Belgeri. In response, plaintiff filed the affidavits of Stine and Jones. Thereafter, Belgeri filed a counteraffidavit.

Jones's affidavit alleges, in pertinent part, as follows: Belgeri met with Jones in Nashville on four or five separate occasions in an attempt to entice plaintiff to obtain financing from defendant; Belgeri called Jones on numerous occasions at Jones's Nashville offices; the loan commitments were signed at plaintiff's office in Nashville; and nearly all negotiations for the loan and commitment occurred in Nashville. Stine's affidavit alleges, in pertinent part, as follows, "The specific conditions of the loan documents were negotiated physically at my office in Nashville, Illinois, when Mr. Belgeri came to my office in Nashville, Illinois, and spent three to four hours in a meeting with me negotiating these terms and conditions." Belgeri's counteraffidavit alleges that negotiations and conditions of the loan documents took place somewhat in Nashville but that these negotiations took place *after* the execution and acceptance of the commitment by plaintiff. Belgeri "recalls" one trip to Nashville prior to receiving the signed commitment. He believes that the purpose of this trip was to deliver a revision to the original loan commitment, previously delivered to Jones in St. Louis. Belgeri also "recalls" receiving the signed commitment in Nashville, Illinois, but cannot recall if Jones signed it in his presence or simply handed it to him signed. He stated, however, that none of the negotiations of the terms of the commitment occurred outside of St. Louis. Belgeri, who was no longer employed by defendant at the time the affidavit was written, stated that during his tenure with defendant, it had no office, representative, or telephone listing in Illinois.

After the trial court heard oral argument, presentation of the affidavits, and case law in support of each party's position, it entered an order on October 27, 1997, finding that defendant subjected itself to the jurisdiction of the courts of Illinois when it, through its agent, solicited business and negotiated the terms of a loan commitment in Illinois. The trial court denied defendant's motion to quash summons and dismiss. Thereafter, on November 18, 1997, defendant filed a supplemental counteraffidavit by Belgeri, without obtaining leave of the court. Defendant did not file a motion to reconsider. Defendant now appeals.

## ANALYSIS

■ Under the long-arm statute (735 ILCS 5/2—209(a)(1) (West 1996)), a court can obtain *in personam* jurisdiction on an out-of-state party if that party transacted business within this state; however, under Illinois law, obtaining jurisdiction under the long-arm statute is not the only criterion which must be met. A court must also consider whether its exercise of *in personam* jurisdiction over the nonresident violates due process. Specifically, there must be sufficient contacts between the nonresident party and the forum state so as to make it fair to require that person to defend the action in the forum state. *Kulko v. Superior Court*, 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690 (1978).

■ We note herein that a split exists between various districts and divisions of our appellate court concerning the burden of proof required to establish that a defendant subjected himself to the jurisdiction of Illinois courts. In *Kutner v. DeMassa*, 96 Ill. App. 3d 243, 244, 421 N.E.2d 231, 234-35 (1981), the First District Appellate Court, Third Division, stated that a party asserting jurisdiction is required only to make a *prima facie* showing that jurisdiction is conferred under the long-arm statute. Several cases follow *Kutner*, including *Wiles v. Morita Iron Works Co.*, 152 Ill. App. 3d 782, 504 N.E.2d 942 (1987), *rev'd on other grounds*, 125 Ill. 2d 144, 530 N.E.2d 1382 (1988), and *Mandalay Associates Ltd. Partnership v. Hoffman*, 141 Ill. App. 3d 891, 491 N.E.2d 39 (1986). However, in *Finnegan v. Les Pourvoiries Fortier, Inc.*, 205 Ill. App. 3d 17, 562 N.E.2d 989 (1990), the First District Appellate Court, Second Division, held that a party asserting *in personam* jurisdiction has to establish it by a preponderance of the evidence and that a reviewing court may not disturb the trial court's findings unless they are against the manifest weight of the evidence. See also *Campbell v. Mills*, 262 Ill. App. 3d 624, 627, 634 N.E.2d 41, 43 (1994). For a further discussion of the inconsistencies, see *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 695 N.E.2d 518 (1998). Notwithstanding the inconsistencies that exist, it is imperative that a

court accept as true all uncontradicted, well-pleaded allegations in plaintiff's complaint, as well as facts contained in uncontested affidavits denying jurisdiction. *Johnson v. Ortiz*, 244 Ill. App. 3d 384, 388, 614 N.E.2d 408, 411 (1993). Moreover, a court may receive and weigh affidavits, but any conflicts that exist in the affidavits and pleadings must be resolved in the plaintiff's favor, even though contrary allegations in the defendant's pleadings exist. *Central Clearing, Inc. v. Omega Industries, Inc.*, 42 Ill. App. 3d 1025, 1028, 356 N.E.2d 852, 855 (1976). Consequently, we find that, applying either burden, plaintiff has established that defendant submitted itself to the jurisdiction of the Illinois courts.

■ The factors a court must look to in determining whether a defendant has sufficiently transacted business in Illinois so as to avail himself of the benefits of Illinois law are: (1) who initiated the transaction, (2) where the contract was entered into, and (3) where the performance of the contract was to take place. No single factor is controlling but, rather, each is significant. *Gordon v. Tow*, 148 Ill. App. 3d 275, 280-81, 498 N.E.2d 718, 722 (1986); see also *Ideal Insurance Agency, Inc. v. Shipyard Marine, Inc.*, 213 Ill. App. 3d 675, 680, 572 N.E.2d 353, 357 (1991). In the instant case, at least one and possibly two of these factors cut in favor of jurisdiction.

■ Here, plaintiff's president, H.J. Jones, stated in his affidavit that he and Belgeri, defendant's agent, met in Nashville, Illinois, on four or five occasions so that defendant could entice plaintiff to obtain financing from defendant. Belgeri's own affidavit admits to two such meetings, one meeting prior to him receiving the loan commitment and one meeting to receive the loan commitment, including the check here in question. Moreover, Belgeri's affidavit does not deny that the other two or three meetings did not occur; rather, his affidavit stated only that these two meetings were the only meetings he could "recall." Plaintiff's attorney, Kevin J. Stine, stated in his affidavit that the specific conditions of the loan documents were actually physically negotiated at his office in Nashville. Stine stated that Belgeri came to his office for a three- or four-hour meeting in order to negotiate the terms and conditions. Correspondence between Belgeri and Jones, as well as between Belgeri and Stine, shows that defendant was eager to make this loan and was extremely frustrated when the loan did not close within the 60-day deadline. The record indicates that the offer was extended an additional 1½ days after the deadline expired, by defendant through its agent, Belgeri.

The parties agree that the loan commitment occurred in Illinois, where a check for $23,156 was delivered to Belgeri. By all accounts, at least two meetings occurred in Illinois, and plaintiff submitted cred-

ible evidence that at least four or five such meetings occurred. The question is not how much activity occurred outside of Illinois; instead, the question is whether defendant's acts in Illinois constituted sufficient contacts within Illinois to subject defendant to the jurisdiction of our courts. *Mandalay*, 141 Ill. App. 3d at 895, 491 N.E.2d at 42.

Defendant cites *Finnegan v. Les Pourvoiries, Inc.*, 205 Ill. App. 3d 17, 562 N.E.2d 989 (1990), previously discussed, in support of its contention that it did not subject itself to the jurisdiction of Illinois courts. In *Finnegan*, the estates of six Illinois residents brought suits against, among others, a Canadian corporation that operated a hunting lodge. The estates sued for wrongful death arising out of the crash of the corporation's airplane in Canada while carrying the Illinois residents. Contact between the Canadian corporation and Illinois was minimal. A Chicago-area sportsman who hosted a half-hour hunting-and-fishing program promoted the defendant's hunting lodge on his show and arranged for the decedents' trips. It was clear, however, that the sportsman was not the defendant's agent. There were a handful of mailings and promotional literature and advertisements in three national sporting magazines.

The instant case is distinguishable from *Finnegan* for numerous reasons, including, first, that Belgeri was defendant's agent and made specific trips to Illinois in order to obtain plaintiff's business. Second, the geographic location between St. Louis and Nashville and Canada and Chicago are entirely separate and distinct. The former locations require a mere car ride over the Mississippi River. In fact, the Illinois side of the river has been called "East County" in reference to its close proximity to St. Louis, Missouri. The economies of the region are intertwined, and many residents of the region work, shop, conduct business, and seek entertainment on both sides of the river. The latter locations require the crossing of several states and entry into a different country. The differences are obvious.

After reviewing the record, we agree that defendant participated in the transaction of business in Illinois and had sufficient minimum contacts within Illinois to satisfy due process and establish jurisdiction in Illinois.

For the foregoing reasons, the order of the circuit court of Washington County denying defendant's motion to quash summons and dismiss is affirmed.

Affirmed.

WELCH and CHAPMAN, JJ., concur.