FRANCES C. RADOSTA, Plaintiff-Appellant, v. DEVIL'S HEAD SKI LODGE *et al.*, Defendants-Appellees.

First District (4th Division)   No. 87—0440

Opinion filed June 30, 1988.

Arthur E. Engelland, of Chicago, for appellant.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers and Robert J. Franco, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Frances Radosta, brought suit against defendants Devil's Head Ski Lodge and World Wide Ski Corporation for injuries she suffered while skiing at Devil's Head in Wisconsin. She filed suit in Illinois and served World Wide in Aspen, Colorado, its headquarters. She served summons upon Devil's Head in Wisconsin and also in Illinois, while Devil's Head's vice-president was participating in a ski show at the O'Hare Exposition Center in Rosemont, Illinois.

Both defendants filed special and limited appearances and moved to quash summons on the grounds that neither was subject to the jurisdiction of Illinois courts because they had not been "doing business" in Illinois and were not subject to the long-arm statute.

The trial court granted the defendants' motions after a hearing and dismissed the lawsuit.

On appeal, plaintiff contends that the trial court erred because both defendants' activities subjected them to Illinois' jurisdiction. Devil's Head was also served with summons while "present" in Illinois.

We affirm.

BACKGROUND

Radosta sustained a fractured pelvis while participating in a ski race at Devil's Head. World Wide was the sponsor and promoter of the race and Devil's Head was the operator of the ski lodge.

In its motion to quash summons, World Wide filed an affidavit of its vice-president, which stated that World Wide performs promotional work only and has three customers in Illinois from whom it solicits business. The corporation is located entirely within Colorado and executes its promotional contracts in that State. World Wide has no representatives or agents in Illinois.

Devil's Head is a Wisconsin corporation with its principal place of business in that State. According to its affidavits, it did not own or use any real estate in Illinois and did not contract to insure any person or property in Illinois. Devil's Head also denied transacting any business in Illinois that would support a finding of jurisdiction.

The trial court allowed Radosta to conduct limited discovery before the hearing on defendants' motions.

Radosta's response in opposition to the motions charged that both defendants had conducted sufficient business in Illinois to bring them within the court's jurisdiction.

Devil's Head "advertised in Illinois, maintained an Illinois telephone number, sold Devil's Head lodging and lift tickets through a Chicago business, contracted with an Illinois business to place sign advertisements and maintained a booth in Chicago at the annual ski show."

World Wide had "contracted with Illinois ski areas to lease ski racing equipment to them in Illinois" and "required the Illinois ski area to agree to permit the use of Illinois courts to enjoin the Illinois ski area in the event of a breach of this contract".[1]

After considering the facts and pertinent law, the trial court held that it lacked jurisdiction over both defendants.

OPINION

The sole issue is whether defendants were "doing business" in Illinois sufficient to confer jurisdiction on our courts. Because we conclude that they were not, defendants' motions to quash service of summons were properly granted.

■■ ■ Under section 2—204 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—204), service on a private corporation may be made "(1) by leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State." Illinois courts may not exercise jurisdiction pursuant to this section over nonresident corporations who are not licensed in Illinois unless the corporations are "doing business" in this State. (*Maunder v. DeHavilland Aircraft of Canada, Ltd.* (1984), 102 Ill. 2d 342, 466 N.E.2d 217, *cert. denied* (1984), 469 U.S. 1036, 83 L. Ed. 2d 401, 105 S. Ct. 511.) This principle of "general" jurisdiction is separate from those embodied in the long-arm statute, which specifically requires either that the defendant commit a tortious act in Illinois giving rise to jurisdiction or that the cause of action arise from defendant's "transaction of business" in this State. (Ill. Rev. Stat. 1985, ch. 110, par. 2—209.) In the pending case, defendants are not amenable to service of process under the long-arm statute because they are not alleged to have committed a tortious act in Illinois and they did not "transact" business within the meaning of the long-arm statute. See, *e.g.*, *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847 (defendant not amenable to service under long-arm statute because the cause of action did not arise from the transaction of busi-

---

[1]The trial court sustained World Wide's motion to strike a copy of its form contract that Radosta offered in support of her contention that it voluntarily subjected itself to Illinois' jurisdiction through a provision dealing with injunctive relief. We do not address this issue since we find no error in the trial court's ruling and therefore cannot consider the contract as evidence of anything.

ness in Illinois); *Harold M. Pitman Co. v. Typecraft Software, Ltd.* (N.D. Ill. 1986), 626 F. Supp. 305 (claims did not arise out of any business transacted or tort committed in Illinois).

■ The question of whether a corporate defendant is currently "doing business" in the forum State depends on the nature and quantity of contacts it maintains. However, "[t]here is no all-inclusive test for determining whether a foreign corporation is doing business in this State." (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 201, 429 N.E.2d 847, 852.) The term has been held to mean more than solicitation by employees whose only authority is to solicit business in the State. (*St. Louis-San Francisco Ry. Co. v. Gitchoff* (1977), 68 Ill. 2d 38, 369 N.E.2d 52 (foreign railroad held to be doing business because it maintained an office in Chicago staffed with employees who solicited business and also employed an agent who spent 60 to 80% of his working hours in Illinois coordinating movement of defendant's railcars).) The nature and extent of business conducted, moreover, must be sufficient to "warrant the inference that the corporation has subjected itself to the jurisdiction and laws" of the State. *Pembleton v. Illinois Commercial Men's Association* (1919), 289 Ill. 99, 104, 124 N.E. 355, 358, *appeal dismissed* (1920), 253 U.S. 499, 64 L. Ed. 1032, 40 S. Ct. 483.

■ The determination of whether a foreign corporation is doing business in Illinois, moreover, does not depend upon the minimum contacts standard that the United States Supreme Court requires as a due process minimum. In fact, the Illinois Supreme Court has refused to equate the two standards because "[t]o do so would render *** the doing-business standard meaningless to many corporate defendants, and it would tie our jurisdictional rules to the changing standards for due process." *Cook Associates*, 87 Ill. 2d at 201, 429 N.E.2d at 852. See also *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 427 N.E.2d 1203.[2]

---

[2]The Federal minimum contacts standard appears to have narrowed significantly, to the point where it resembles the Illinois doing business standard. In *Helicopteros Nacionales de Colombia, S. A. v. Hall* (1984), 466 U.S. 408, 80 L. Ed. 2d 404, 104 S. Ct. 1868, the Supreme Court found that survivors and representatives of deceased United States citizens killed in a helicopter crash in Peru could not maintain their wrongful death action in Texas despite defendant's four contacts with the State. The defendant, a Colombian corporation, had entered into a contract to provide helicopter transportation for a Peruvian consortium, the alter ego of a Texas-based joint venture, during the consortium's construction of a pipeline in Peru. One of defendant's helicopters crashed in Peru, leading to the lawsuit filed in Texas. The contacts that defendant had with Texas were the following: Its chief executive officer had flown to Houston to negotiate the transportation contract; it purchased most of the helicopters over a per-

In the words of Justice Cardozo, a corporation is "doing business" when it operates within the State "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.* (1917), 220 N.Y. 259, 267, 115 N.E. 915, 917.

Illinois cases agree that "doing business" means a "course of business" or a "regularity of activities," as opposed to isolated or sporadic acts. (See *The Hertz Corp. v. Taylor* (1959), 15 Ill. 2d 552, 155 N.E.2d 610 (foreign steamship company that maintained a Chicago office in which employees solicited business and sold tickets for defendant's ships held to be doing business in the State); *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252 (defendant manufacturer held to be doing business in Illinois, in part because it had supervisory control over its Illinois distributor pursuant to service and sales contract); *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847 (defendant's attendance at week-long trade show which generated $50,000 in orders, plus presence of an independent manufacturer's representative who sold defendant's goods in the State, held to be insufficient contacts, as defendant did not have an office or employee in Illinois and since the record did not reflect that defendant exercised control over the manufacturer's representative).) If a defendant's products regularly enter Illinois in substantial amounts, jurisdiction may be justified also. *Connelly v. Uniroyal, Inc.* (1979), 75 Ill. 2d 393, 389 N.E.2d 155 (products liability action). *Cf.*

---

iod of years from a helicopter company in Fort Worth; it sent prospective pilots and management personnel for training to the Texas helicopter company; and the checks that paid for its transportation services were drawn on a Texas bank for payment to a New York account. The Supreme Court reasoned that because defendant was not sued upon its business transactions in the forum, there was not "specific jurisdiction" supporting personal jurisdiction. Accordingly, defendant could be sued in Texas only if there was "general jurisdiction," which requires a greater affiliation with the forum. In concluding that general jurisdiction was also lacking, the Court dismissed the officer's trips to Texas as sporadic. The fact that the checks were drawn on a Texas bank was considered of minor significance. The Court further ruled that the mere purchases of helicopters from the Texas firm, even though they occurred at regular intervals, were not sufficient to warrant the State's assertion of jurisdiction because the lawsuit was not related to these purchase transactions. The training of the pilots was characterized as part of the package of goods and services that was purchased and thus not a significant base for finding jurisdiction. One commentator has noted that the dismissal of each contact as insubstantial, as well as the Court's failure to consider their aggregate effect, "suggests very strongly that the threshold contacts required for general jurisdiction are very substantial, indeed." Friedenthal, Kane & Miller, Civil Procedure (1985).

The *Helicopteros* "specific" jurisdiction concept echoes Illinois' long-arm law and the "general" jurisdiction principle resembles our doing business standard.

*Colleti v. Credele* (1988), 169 Ill. App. 3d 1068 (plaintiff allowed to maintain wrongful death action in Illinois although the automobile collision occurred in Kentucky because of defendants' other business connections with Illinois).

■ In the pending case, Radosta contends that the "totality" of contacts that defendants had with Illinois fits within the doing business concept, although she concedes that each contact may fall short individually. Of the five contacts between Devil's Head and Illinois, three (advertising, maintaining an Illinois telephone number, and contracting for the placement of sign advertisements) constitute solicitation. These do not support jurisdiction. *Cook Associates*, 87 Ill. 2d 190, 429 N.E.2d 847; see also *Braasch v. Vail Associates, Inc.* (N.D. Ill. 1973), 370 F. Supp. 809 (plaintiff injured while skiing in Colorado could not maintain suit in Illinois on the basis of defendants' solicitation in Illinois); *Berks v. Rib Mountain Ski Corp.* (N.D. Ill. 1983), 571 F. Supp. 500 (no jurisdiction over defendant whose only Illinois-related activities were means of soliciting business, such as a booth at a trade show, newspaper advertisements, broadcasts of skiing conditions, and circulars distributed through ski shops).

The fourth contact, selling lodging and lift tickets, refers to the availability of Devil's Head's discount coupons or "scrip" in one ski shop in Chicago. An affidavit of Larry Olive indicates that Devil's Head did not send the scrip to Illinois or authorize its placement in the ski shop. Rather, Olive (who had received the scrip in payment for advertising services rendered to Devil's Head) sold it to the ski shop. There is no evidence that Olive was an employee of Devil's Head or its authorized agent. Furthermore, the alleged sale of such scrip in one ski shop does not appear to rise to the level of a course of conduct or regular business activity. *Cook Associates*, 87 Ill. 2d 190, 429 N.E.2d 847.

The final contact between Devil's Head and Illinois was the participation of defendant's assistant manager in the ski show in Rosemont, Illinois. This type of transient contact has already been rejected as a jurisdictional base in *Cook Associates*. Also, in *Harold M. Pitman Co. v. Typecraft Software, Ltd.* (N.D. Ill. 1986), 626 F. Supp. 305, the Federal district court applied Illinois law and determined that service of summons on the defendant corporation's agent while he was present in Illinois for a three-day exhibition was invalid because there was insufficient evidence that the defendant met the doing business standard.

Radosta nevertheless relies on *Braband v. Beech Aircraft Corp.* (1978), 72 Ill. 2d 548, 382 N.E.2d 252, to support her "totality of contacts" argument. In *Braband*, the court found the jurisdictional requisites had been fulfilled because of the following: (1) Under a written

agreement, an Illinois distributor (Hartzog) was authorized to sell the foreign defendant's products (Beechcraft airplanes) in Illinois. Hartzog was also contractually bound to service and repair all Beechcraft planes in Illinois that were covered by warranty provisions, regardless of whether Hartzog sold them. (2) The contract empowered defendant to oversee Hartzog's entire operation, including its facilities, books and records, supplies and personnel, and to terminate the sales agreement without advance notice; (3) defendant's marketing manager frequently visited Hartzog to promote the sale of its aircraft and had cosponsored a sales presentation in Illinois; and (4) for a period of at least five years, defendant had advertised in Chicago-area telephone directories.

*Braband* is consistent with the course of business analysis that requires more than a sporadic or transient connection with the forum State. As such, *Braband* does not aid Radosta regardless of her attempt to pattern her facts to fit. She has not established that Devil's Head maintained the type of contractual and sales arrangement that the *Braband* defendant had set up in Illinois. Accordingly, the trial court properly determined that Illinois does not have jurisdiction over this Wisconsin defendant.

Similarly, Radosta's attempt to establish a sufficient business affiliation between World Wide and Illinois must fail. This defendant, incorporated under the laws of Colorado, only had three customers in Illinois and no agents, offices, sales force or other connection to the forum. World Wide's business, the promotion of ski races, was not conducted in Illinois. The record does not detail the relationship between World Wide and its three customers but does indicate that contracts for promotional activities were executed in Colorado. This is clearly insufficient contact, not only under Illinois' doing business standard, but also under the Federal minimum contacts standard. (See *Helicopteros Nacionales de Colombia, S. A. v. Hall* (1984), 466 U.S. 408, 80 L. Ed. 2d 440, 104 S. Ct. 1868 (customers and purchases in the forum State were inadequate basis for jurisdiction, which requires activities of a "continuous and systematic" nature).) We conclude that the Illinois courts lack jurisdiction over this defendant also.

For the foregoing reasons, we affirm the judgments of the trial court granting both defendants' motions to quash summons and to dismiss Radosta's lawsuit.

Judgments affirmed.

JIGANTI, P.J., and McMORROW, J., concur.