DEBRA DAL PONTE, as Independent Adm'r of the Estate of John Charles Dal Ponte, *et al.*, Plaintiffs and Appellants-Respondents, v. NORTHERN MANITOBA NATIVE LODGES, INC., Defendant-Appellee (Nelson Keeper *et al.*, Defendants-Petitioners).

First District (5th Division)   Nos. 1—89—1186, 1—89—1196 cons.

Opinion filed October 11, 1991.

Joseph R. Curcio, Ltd., and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellants.

McKenna, Storer, Rowe, White & Farrug, of Chicago (James P. DeNardo and Christine L. Olson, of counsel), for appellee.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Bridgman, Michael A. Pollard, Karen Kies DeGrand, Donald J. Hayden, and Oran F. Whiting, of counsel), for Nelson Keeper and Fishing Lake Lodge.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Defendants, Fishing Lake Lodge (Lodge) and Nelson Keeper, appeal under Supreme Court Rule 306(a)(1)(iii) (134 Ill. 2d R. 306(a)(1)(iii)) from an order denying their motion to dismiss for lack of personal jurisdiction. Plaintiffs, the Dal Ponte family, appeal under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) from an order dismissing defendant, Northern Manitoba Native Lodges, Inc. (Northern Manitoba), for lack of personal jurisdiction. The appeals were subsequently consolidated. We consider: (1) whether Northern Manitoba's participation in trade shows in Illinois was sufficient to find that the Lodge, Keeper, and Northern Manitoba were doing business in Illinois; and (2) whether plaintiffs' cause of action arose from Northern Manitoba's participation in trade shows in Illinois and subjected the Lodge, Keeper, and Northern Manitoba to jurisdiction under the long-arm statute. We affirm in part, reverse in part, and remand.

Plaintiffs filed a wrongful death action seeking damages for the death of John Charles Dal Ponte (Dal Ponte) against the Lodge, Keeper, and Northern Manitoba. In May of 1987, Dal Ponte drowned in Manitoba, Canada, when the boat he was in capsized while he and a group of other fishermen were on their way to the Lodge. Plaintiffs alleged that the Lodge and Keeper owned and operated the boat involved in the accident. They also alleged that Northern Manitoba entered into a contract on the Lodge's behalf, during a sport fishing show in Illinois, to provide safe transportation for the fishing trip.

The Lodge, Keeper, and Northern Manitoba each filed a special and limited appearance and moved to dismiss the complaint for lack

of personal jurisdiction. The following facts are based on the depositions and affidavits presented for the motions to dismiss.

The Lodge, located and incorporated in Manitoba, Canada, provided lodging and fishing guide services during the four-month fishing season. The Lodge was not registered to do business in Illinois and did not have an office, employees, or agents in Illinois. Keeper, who owned the Lodge, was a Canadian resident.

The Lodge accepted reservations directly or through its membership in Northern Manitoba. In 1987, the year the accident occurred, 15% to 25% of the Lodge's reservations were made through Northern Manitoba.

Northern Manitoba was a Canadian corporation that handled the travel arrangements for guests at its member fishing lodges for a commission. Its office was located in Winnepeg, Canada. Its shareholders and officers were owners of various lodges located in Manitoba, Canada, where they were residents. Keeper was an officer. The purpose of Northern Manitoba was to promote, market, and expedite travel arrangements for its member lodges. Northern Manitoba was not registered to do business in Illinois, and it did not have employees or agents permanently located in Illinois. However, in addition to operating out of its office in Canada, it rented a booth at an annual trade show in Illinois since 1981. During the shows, Northern Manitoba distributed brochures and travel information and accepted reservations and deposits for member lodges. In 1987, it participated in one trade show in Illinois, for approximately 12 days, and may have also participated in one other show in Illinois. Northern Manitoba did not have a record of the number of reservations it made during the show. Dal Ponte's fishing trip at the Lodge was not reserved through Northern Manitoba.

In plaintiffs' response to the motions to dismiss, they relied on Northern Manitoba's business records, which are not in the record on appeal. Plaintiffs stated that, without reference to year, 25.7% to 38.5% of Northern Manitoba's reservations were made by "persons from Illinois." Also, 17% to 23.1% of the Lodge's reservations were made by "persons from Illinois."

Dal Ponte's fishing trip was originally reserved in January of 1987 at another lodge, Bolton Lake Lodge, through Northern Manitoba while Robert Carlson, a member of Dal Ponte's fishing group, was attending a sport fishing show in Illinois. However, Northern Manitoba subsequently cancelled the reservation and returned the deposit because Bolton Lake Lodge did not open that year.

When the trip was cancelled, Joe Gurosh, another member of Dal Ponte's fishing group, telephoned the Lodge in Canada and made a reservation for the group. He sent a deposit check to the Lodge in Canada. Gurosh testified at his deposition that Carlson told him that when the reservation was cancelled Northern Manitoba suggested the Lodge as an alternative.

In ruling on the Lodge and Keeper's motion to dismiss, the trial judge found that Northern Manitoba was an agent for the Lodge and Keeper and its participation in trade shows amounted to doing business in Illinois. As a result, the Lodge and Keeper were subject to personal jurisdiction in Illinois and their motion to dismiss was denied. They filed a petition with this court for leave to appeal under Rule 306(a)(1)(iii) which was granted.

Subsequently, the trial judge found, for reasons not in the record, that Northern Manitoba was not subject to jurisdiction in Illinois and granted its motion to dismiss. A finding was entered pursuant to Rule 304(a) that the order was final and there was no just reason to delay enforcement or appeal and plaintiffs appealed.

OPINION

■■ A nonresident corporation is subject to jurisdiction in Illinois under either the "doing business" rule or the long-arm statute (Ill. Rev. Stat. 1989, ch. 110, par. 2—209). (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847.) The burden of proving that a nonresident defendant is subject to jurisdiction is on the party seeking to impose jurisdiction. *Konicki v. Wirta* (1988), 169 Ill. App. 3d 21, 523 N.E.2d 160.

Plaintiffs argue that jurisdiction is proper over the Lodge, Keeper, and Northern Manitoba under the doing business rule. Plaintiffs assert that the Lodge and Keeper authorized Northern Manitoba to enter into contracts in Illinois on their behalf and that Northern Manitoba's activities in Illinois were sufficient to find that they were doing business in Illinois.

■■ Under the doing business rule, a nonresident corporation is considered to have consented to jurisdiction if it is doing business in the State. (*Cook*, 87 Ill. 2d 190, 429 N.E.2d 847.) There is no test to make the determination of what activity amounts to doing business; however, the character and extent of the business must be sufficient to justify an inference that the nonresident corporation has submitted to the jurisdiction and laws of the State. (*Cook*, 87 Ill. 2d 190, 429 N.E.2d 847.) There must be regular activity and " 'not occasionally or casually, but with a fair measure of perma-

nence and continuity.' " (*Cook*, 87 Ill. 2d at 203, 429 N.E.2d at 853, quoting *Tauza v. Susquehanna Coal Co.* (1917), 220 N.Y. 259, 267, 115 N.E. 915, 917.) The determination of whether a corporation was doing business in the State is dependent on the unique facts of the case. *Colletti v. Crudele* (1988), 169 Ill. App. 3d 1068, 523 N.E.2d 1222.

Plaintiffs rely on *Colletti* (169 Ill. App. 3d 1068, 523 N.E.2d 1222) to support their argument that Northern Manitoba was doing business in Illinois. In *Colletti*, a Florida corporation involved in interstate transport made approximately 12 trips a year with stops in Illinois which generated less than 1% of its revenue. It also travelled through Illinois on occasion without making a stop. The corporation always attempted to transport cargo from Illinois on its return trips. It also had an agent for service of process in Illinois and had consented to jurisdiction in Illinois in three other cases stemming from the same occurrence. The court found that the corporation was doing business in Illinois because its contacts were continuous and systematic and it actively procured business. The court also considered it significant that the corporation had an agent to accept service in Illinois, and the corporation's consent to jurisdiction in the other cases tipped the balance in favor of finding jurisdiction was proper.

*Colletti* does not require a finding in this case that Northern Manitoba was doing business in Illinois. In *Colletti*, the corporation averaged 12 trips a year with stops in Illinois and additional trips through Illinois. This contact with Illinois was more continuous and systematic than Northern Manitoba's contact of one trade show a year in Illinois. Also in *Colletti*, the corporation had an agent in Illinois for service of process and consented to jurisdiction in other cases. These factors are not present in this case.

The Lodge, Keeper, and Northern Manitoba rely on two cases they contend are analogous to the present case and support a finding that Illinois does not have jurisdiction: *Finnegan v. Les Pourvoiries Fortier, Inc.* (1990), 205 Ill. App. 3d 17, 562 N.E.2d 989, and *Radosta v. Devil's Head Ski Lodge* (1988), 172 Ill. App. 3d 289, 526 N.E.2d 561.

In *Finnegan*, the court found that a Canadian corporation, operating a hunting lodge in Canada, was not doing business in Illinois. Other than promotional activity, any connection it had to Illinois was through Joseph Wyer, an Illinois resident. Wyer distributed the lodge's brochures from a booth at an outdoor show in Illinois and arranged two trips to the lodge. He collected the fees and his com-

mission, made travel arrangements, and acted as a tour guide on one of the trips. The corporation denied that it entered into an agreement with Wyer to promote the lodge, and the court did not consider whether there was an agency relationship. However, the court found that the corporation's activity in Illinois, either independently or through Wyer, was not regular, systematic, or sufficiently substantial to hold it was doing business in Illinois.

In *Radosta*, the court found that a Wisconsin ski resort and a Colorado corporation were not doing business in Illinois. Other than advertising, the ski resort's contacts in Illinois consisted of selling lodging and ski lift tickets in one ski shop and maintaining a booth at an annual ski show. The Colorado corporation leased ski equipment to three Illinois customers. Although the ski resort denied that the ski shop was its agent, the court found that the sale of lodging and lift tickets did not amount to regular business activity. Similarly, the Colorado corporation's business with three Illinois customers was insufficient. The court also found that the ski resort's participation in the ski show was transient conduct and not sufficient to find it was doing business in Illinois.

In this case, the actions of Northern Manitoba in Illinois were the sole basis for establishing whether the Lodge, Keeper, and Northern Manitoba were doing business in Illinois. Northern Manitoba's contact with Illinois was its annual participation in trade shows since 1981 during which it accepted reservations for its member lodges. In 1987, the year the accident occurred, it spent 12 days at a trade show in Illinois.

■ Northern Manitoba's actions in Illinois were similar to those considered insufficient in *Finnegan* and *Radosta* to establish doing business in Illinois. Its actions of accepting reservations while participating in the trade show do not constitute regular business activity and are more akin to occasional or casual activity. Plaintiffs contend that 25% to 38% of Northern Manitoba's reservations were from Illinois residents but, even though the documents plaintiffs relied on are not in the record, the percentages do not identify the reservations that were made through the trade shows in Illinois. As a result, Northern Manitoba's actions in Illinois are insufficient to satisfy the doing business rule.

■ Similarly, even accepting for the purpose of argument that Northern Manitoba was an agent for the Lodge and Keeper, its actions are also insufficient to find that the Lodge and Keeper were doing business in Illinois. Northern Manitoba accepted a total of 15% to 25% of the Lodge's reservations in 1987. Plaintiffs contend,

also without support in the record, that 17% to 23% of the Lodge's business was from Illinois residents. However, there was no indication as to how much of that business was generated by Northern Manitoba at the trade shows in Illinois.

Although plaintiffs did not specifically raise this argument, we also consider whether the Lodge, Keeper, and Northern Manitoba were subject to jurisdiction under the long-arm statute.

The long-arm statute provides that a nonresident corporation will be subject to jurisdiction for causes of action arising from the "transaction of any business" in the State. Ill. Rev. Stat. 1989, ch. 110, pars. 2—209(a)(1), (f).

■ In this case, the cause of action was the wrongful death of Dal Ponte during the fishing trip at the Lodge in Canada. The reservations for the trip were made by a member of Dal Ponte's fishing group directly with the Lodge. Although the group made a previous reservation, at a different lodge, through Northern Manitoba at the trade show, that reservation was cancelled and the deposit was refunded. Northern Manitoba may have suggested the Lodge as an alternative, but this connection is insufficient. The facts establish that plaintiffs' cause of action did not arise from Northern Manitoba's actions at the trade show in Illinois. As a result, it was not subject to personal jurisdiction in Illinois under the long-arm statute. Similarly, even assuming Northern Manitoba was their agent, the Lodge and Keeper were also not subject to jurisdiction under the long-arm statute.

For the foregoing reasons, we reverse the order finding personal jurisdiction over the Lodge and Keeper (No. 1—89—1186) and remand for entry of an order dismissing them. We affirm the order dismissing Northern Manitoba for lack of personal jurisdiction (No. 1—89—1196).

Affirmed in part; reversed in part and remanded.

GORDON and McNULTY, JJ., concur.