DAVID A. PILIPAUSKAS *et al.*, Indiv. and as the Next Friends of William Pilipauskas, a Minor, *et al.*, Plaintiffs-Appellees, v. DENVER YAKEL *et al.*, both Indiv. and d/b/a Arrow Lodge Resort, Defendants-Appellants.

First District (5th Division)   No. 1—92—3592

Opinion filed February 4, 1994.

Julie L. Trester and Michael Resis, both of Querrey & Harrow, Ltd., of Chicago, for appellants.

Robert M. Winter, of Robbins, Salomon & Patt, Ltd., of Chicago, for appellees.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

The defendants, Denver Yakel and Carole Yakel, both individually and d/b/a the Arrow Lodge Resort (Arrow Lodge or Lodge), brought a petition for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(1)(iii). (134 Ill. 2d R. 306(a)(1)(iii).) We granted the defendants' leave to appeal. The defendants appeal from an order of the trial court denying their motion to quash the service had upon them for lack of personal jurisdiction.

The plaintiffs, David, Debra and William Pilipauskas, and Sandra and Matthew Rusek, filed this suit for injuries allegedly sustained while they were vacationing at the Arrow Lodge in Watersmeet, Upper Peninsula, Michigan. Plaintiffs' second amended complaint alleges that plaintiffs checked into an Arrow Lodge cottage on June 16, 1990, and that during their visit, plaintiffs allegedly suffered injuries as the result of carbon monoxide poisoning. The complaint alleges that at all relevant times the defendants were doing business in Illinois and that defendants transacted business in Illinois within the meaning of the Illinois long-arm statute. See Ill. Rev. Stat. 1991, ch. 110, par. 2—209(a)(1).

The Yakels were served with a summons and complaint at their home in Watersmeet, Michigan, on September 17, 1991, by the sheriff of Gogebic County, Upper Peninsula, Michigan. The Yakels entered a special and limited appearance and moved to quash service of process and to dismiss arguing that they had done nothing to subject them to jurisdiction in Illinois. The Yakels attached their affidavits in support of the motion. The Yakels' affidavits state that the Yakels reside in Watersmeet, Michigan, where they jointly operate the Arrow Lodge as a sole proprietorship. The Yakels further stated that they only have a Michigan telephone number and have never directly advertised or solicited business in Illinois, nor have they ever come to Illinois on business.

Subsequent to filing their motion to quash, the Yakels appeared for discovery depositions pursuant to Illinois Supreme Court Rule 201(l). (134 Ill. 2d R. 201(l).) Carole Yakel testified to the following. Carole and her husband Denver had owned and operated the Arrow Lodge for approximately 17 years where they provide lodging to vacationers in the Upper Peninsula as well as rent boating equipment to their guests. The Arrow Lodge has seven housing units, three of which are available to guests year round, while the remaining units are available approximately five months of the year. Carole is responsible for the making or taking of reservations as well as the record-keeping.

In 1989 visitors to Arrow Lodge came from a number of different

States, including Nebraska, Indiana, Wisconsin, North Carolina, and Illinois. The Yakels received 132 deposits for rentals during 1989, 61 (or 46%) of which were received from Illinois residents. In 1990, the Yakels received 173 deposits, of which 70 (or 40%) were received from Illinois residents.

In 1989 a total of 97 phone calls were made from the Yakels' address to Illinois. During the first 10 months of 1990, 110 phone calls were made to Illinois. Carole testified that a large portion of those phone calls were probably made by her son or daughter to friends in Illinois.

Usually, a guest will contact the Yakels to request a brochure and, after receiving one, will call or write back to reserve a cabin if he or she is so inclined. Normally, the only time Carole calls a potential guest is if she happens to have missed a call and there is a message on the answering machine. The majority of the time that Carole responds to a potential guest, she does so by letter rather than by phone. However, a lot of reservations are made over the phone. When Carole receives a deposit she always sends a written confirmation.

Arrow Lodge belongs to a number of associations, including: Gogebic Area Convention and Visitor's Bureau (GACVB), Upper Peninsula Travel and Recreation Association (UPTRA), Eagle River Chamber of Commerce, Land O'Lakes Chamber of Commerce, Watersmeet Chamber of Commerce and Vilas County Advertising. Some of the associations print brochures containing information regarding local businesses, including Arrow Lodge, for distribution to tourists. The brochures are distributed from tourist information centers throughout Michigan. GACVB and UPTRA have 800 numbers; they receive phone calls from interested parties as well as receiving written inquires. Some of the associations occasionally distribute the brochures at sports shows.

Arrow Lodge receives much of its business by word of mouth from former guests. In the last several years Arrow Lodge has advertised in a couple of Wisconsin snowmobile publications. The defendants do not take out any other advertisements, and they have never attended any trade shows in order to advertise Arrow Lodge.

In addition, the Yakels publish their own brochure concerning Arrow Lodge. Some of the associations may distribute the Lodge brochures at trade shows. The Yakels send the Lodge brochures to individuals who have expressed an interest in vacationing on the Upper Peninsula and who might be interested in staying at the Lodge. The Yakels obtain the names of some of these potential customers from the associations to which they belong. Several of the

associations compile lists of individuals who have inquired about lodging and recreation on the Upper Peninsula and then provide these lists to their members. The remainder of the Yakels' marketing activities consists of sending out a mailing during the holiday season to individuals who have stayed at the Lodge or written to the Yakels about accommodations within the previous two years. The Yakels typically enclose a Lodge brochure with their holiday letters. The back page of the brochure includes a map which shows where the Lodge is located.

Debra Pilipauskas first contacted Carole by phone. Carole sent a letter to Debra with a 1990 brochure and a rate sheet, a Watersmeet brochure, a Thousand Island Lake map, and a Cisco Chain map. Carole never had any direct communications from the Ruseks and she did not know how the Pilipauskases learned of Arrow Lodge.

At his deposition, Denver Yakel testified that he did not disagree with anything his wife had said at her deposition. Denver did not know of any particular time that the Gogebic Association, or any other association that Arrow Lodge belonged to, took Arrow Lodge brochures to any trade shows in Illinois. Denver also testified that they only took out the ads in the snowmobile magazines once a year.

Plaintiffs filed a response opposing the motion to quash. Plaintiffs cited portions of the Yakels' deposition testimony in support of their position as well as the affidavit of Debra Pilipauskas.

Debra's affidavit stated she contacted the Michigan Travel Bureau via its 1-800 number in December of 1989 in reference to fishing lodges and resorts. Debra was referred to UPTRA and GACVB and obtained brochures from the same that contained information about Arrow Lodge. Thereafter, Debra contacted the Lodge and was sent a brochure, rate sheet and letter regarding the availability of units. In response to the information provided to her by telephone and correspondence from Arrow Lodge, Debra sent a deposit check. Debra stated that she and her family learned of, selected and traveled to the Arrow Lodge as a result of the information provided by UPTRA, GACVB, and Arrow Lodge.

The Yakels filed a reply in support of their motion to quash. After hearing, the trial court denied the defendants' motion.

When ruling the trial court stated:

"I think what the ruling should be here is the question of whether or not you've shown by a preponderance jurisdiction. I think under the set of facts, we have a seventeen year history of Illinois residents going to this lodge, forty to fifty percent is Illinois business. Some hundred and some phone calls a year, some personal, some business, as a matter of record, being made into Illinois. Taking ads in certain trade papers that are distributed in

Illinois, and some of the facts that are involved here. Importantly, in this case, the reservation was made directly by an Illinois resident to this lodge.

\* \* \*

I don't think it's unreasonable for them to anticipate being brought into an Illinois court to defend themselves for a cause of action that relates directly to the stay."

The sole issue defendants present for review is whether the trial court erred in denying their motion to quash the service had upon them for lack of personal jurisdiction. The defendants maintain that they should not be subject to jurisdiction in Illinois. Plaintiffs argue on appeal that jurisdiction over the defendants is proper under any one of three theories: (1) the defendants transacted business in Illinois (735 ILCS 5/2—209(a)(1) (West 1992)); (2) the defendants were doing business in Illinois (735 ILCS 5/2—209(b)(4) (West 1992)); and (3) the exercise of jurisdiction is constitutionally permissible (735 ILCS 5/2—209(c) (West 1992)). Finally, plaintiffs argue that the defendants submitted to the jurisdiction of the court when they filed a response to the plaintiffs' motion to compel.

For the following reasons, we find that the defendants did not submit to the jurisdiction of the court when they filed a response to the motion to compel. We also find that the trial court erred in denying the defendants' motion to quash.

I

Plaintiffs argue that the defendants submitted to the jurisdiction of the court when defendants filed their response to plaintiffs' motion to compel.[1]

While the defendants' petition for leave to appeal was pending, the plaintiffs filed a motion to compel discovery. In their motion, plaintiffs acknowledged the fact that the petition was pending and pointed out that the defendants had refused to file any pleading or discovery response which might subject them to the court's jurisdiction. The motion requested that the trial court order the defendants to answer the outstanding discovery and pleadings within three days of the appellate court order ruling on the petition for leave to appeal. Prior to the trial court ruling on the plaintiff's motion to compel, this

[1]The motion to compel and the Yakels' response in opposition to it were not part of the record on appeal, but rather were made part of a proposed supplemental record by plaintiffs. The defendants requested that this court deny plaintiffs leave to file their proposed supplemental record. This court took plaintiffs' motion for leave to file the supplemental record with the case. At this time we grant the plaintiffs' motion to file the proposed supplemental record.

court granted defendants leave to appeal. This court's granting of leave to appeal should have stopped all activity in the trial court; however, the defendants subsequently filed a "Response of Defendants in Opposition to Plaintiff's Motion to Compel" with the trial court.

■ In this pleading the defendants argued that, pursuant to Supreme Court Rule 306(f), the proceedings in the trial court were stayed. Plaintiffs argued that in order for the trial court to rule on defendants' Rule 306(f) objection, the Illinois court would first have to have jurisdiction over the defendants. Plaintiffs maintain that this action recognized the trial court's ability to rule on some aspect of the case other than the issue of *in personam* jurisdiction and therefore defendants generally appeared in this cause at the time they filed this response. The plaintiffs correctly argue the well-settled rule that whenever a defendant takes any action that is not for the sole purpose of objecting to the court's jurisdiction over the person, that act will amount to a general appearance. (*Mauro v. Peterson* (1984), 122 Ill. App. 3d 466, 468, 461 N.E.2d 564, 566.) However, after carefully reviewing the defendants' response in this case, we find this rule inapplicable to the facts of the present case.

Defendants filed their response "pursuant to their previously filed special and limited appearance under section 2—301 of the Code of Civil Procedure." Defendants' response indicated that as the appellate court had granted the defendants' appeal, the trial court did not have jurisdiction to enter any order compelling the defendants to comply with outstanding discovery or file pleadings. The defendants stated:

> "On the contrary, Supreme Court Rule 306(f) provides in relevant part: 'If the petition is granted, the proceedings in the trial court are stayed.' 134 Ill. 2d R. 306(f). As proceedings in the trial court are stayed, the trial court has no jurisdiction to enter an order granting the plaintiffs' motion to compel."

The defendants' motion merely pointed out to the trial court that it had lost jurisdiction and all proceedings pending therein were stayed by this court's December 4, 1992, granting of the defendants' leave to appeal. The response did not constitute an act of the defendants recognizing the trial court's ability to rule on an aspect of the case, but rather apprised the trial court of the status of the case, calling attention to the fact that the trial court had lost jurisdiction.

We find the plaintiffs' argument that the defendants submitted to the jurisdiction of the trial court by filing a response in opposition to the plaintiffs' motion to compel discovery to be without merit.

## II

The Illinois long-arm statute states in relevant part:

> "(a) Any person, whether or not a citizen or resident of the

State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this State;

* * *

(b) A court may exercise jurisdiction in any action arising within or without this State against any person who:

* * *

(4) Is a natural person or corporation doing business within this State.

(c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2—209 (West 1992).

Where *in personam* jurisdiction is challenged, the party asserting it has the burden to establish such jurisdiction by a preponderance of the evidence. (*Finnegan v. Les Pourvoiries Fortier, Inc.* (1990), 205 Ill. App. 3d 17, 562 N.E.2d 989.) All undenied well-pled allegations in the complaint must be accepted as true; however, facts contained in an uncontested affidavit must also be accepted as true. (*Johnson v. Ortiz* (1993), 244 Ill. App. 3d 384, 388, 614 N.E.2d 408.) A reviewing court may not disturb the findings of the trial court unless they are against the manifest weight of the evidence. *Finnegan v. Les Pourvoiries Fortier, Inc.* (1990), 205 Ill. App. 3d 17, 562 N.E.2d 989.

It is unnecessary to determine whether the requirements of the long-arm statute have been met, when due process requirements bar any exercise of jurisdiction over the defendants. (See *Johnson v. Ortiz* (1993), 244 Ill. App. 3d 384, 389, 614 N.E.2d 408; see also *Ideal Insurance Agency, Inc. v. Shipyard Marine, Inc.* (1991), 213 Ill. App. 3d 675, 678, 572 N.E.2d 353.) We do not believe that the plaintiffs have sufficiently proved jurisdiction on the basis of either transaction of business within Illinois or doing business in Illinois. (See *Dal Ponte v. Northern Manitoba Native Lodges, Inc.* (1991), 220 Ill. App. 3d 878, 581 N.E.2d 329; *Finnegan v. Les Pourviories Fortier, Inc.* (1990), 205 Ill. App. 3d 17, 562 N.E.2d 989; *Radosta v. Devil's Head Ski Lodge* (1988), 172 Ill. App. 3d 289, 526 N.E.2d 561.) However, our resolution of the due process issue would make a discussion of those issues irrelevant.

In the trial court and until the filing of the appellees' brief, the parties had devoted their arguments to the issues of whether the defendants were "doing business" in Illinois and whether the defendants "transacted business" in Illinois. However, on appeal plaintiffs contend Illinois may have personal jurisdiction over the

defendants under section 2—209(c) of the long-arm statute. Before presenting their argument, plaintiffs noted that "the appellee may urge any point in support of the judgment on appeal, even though not directly ruled on by the trial court, so long as the factual basis for such point was before the trial court." (*Shaw v. Lorenz* (1969), 42 Ill. 2d 246, 248, 246 N.E.2d 285, 287; see also *Jackson v. Chicago Board of Education* (1989), 192 Ill. App. 3d 1093, 1099, 549 N.E.2d 829, 833.) As plaintiff is correct in this regard, we address this issue.

■ Section 2—209(c) states:

"A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." (735 ILCS 5/2—209(c) (West 1992).)

Since the enactment of Public Act 86—840 (section 2—209(c)), several courts have held that section 2—209(c) is coextensive with due process. (See *Rokeby-Johnson v. Derek Bryant Insurance Brokers, Ltd.* (1992), 230 Ill. App. 3d 308, 320-21, 594 N.E.2d 1190, citing *FMC Corp. v. Varonos* (7th Cir. 1990), 892 F.2d 1308; *L.B. Foster Co. v. R.R. Service, Inc.* (N.D. Ill. 1990), 734 F. Supp. 818.) "Under State due process guarantees, it must be fair, just and reasonable to require a nonresident to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." (*G.M. Signs, Inc. v. Kirn Signs, Inc.* (1992), 231 Ill. App. 3d 339, 342, 596 N.E.2d 212, citing *Rollins v. Ellwood* (1990), 141 Ill. 2d 244, 275, 565 N.E.2d 1302.) "Federal due process requires that the defendant have such 'minimum contacts' with the forum State that the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice." (*G.M. Signs, Inc. v. Kirn Signs, Inc.* (1992), 231 Ill. App. 3d 339, 342, 596 N.E.2d 212, citing *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.) In determining whether a trial court's exercise of jurisdiction over a nonresident satisfies Federal due process standards, a court must consider three criteria: (1) whether the nonresident defendant has minimum contacts within the forum State such that he has fair warning that he may be required to defend himself there; (2) whether the action arises out of the defendant's contacts with the forum State; and (3) whether it is reasonable to require the defendant to litigate in the forum State. *Autotech Controls Corp. v. K.J. Electric Corp.* (1993), 256 Ill. App. 3d 721, 725, citing *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 471-77, 85 L. Ed. 2d 528, 540-44, 105 S. Ct. 2174, 2181-84; see also *Johnson v. Ortiz* (1993), 244 Ill. App. 3d 384, 388, 614 N.E.2d 408; *Ores v. Kennedy* (1991), 218 Ill. App. 3d 866, 578 N.E.2d 1139; U.S. Const., amends. V, XIV.

The fair warning requirement may be satisfied by showing that defendant purposefully directed its activities at Illinois residents, reached out to create continuing relationships with the citizens, or personally derived benefits from the activities with Illinois. (*Autotech Controls Corp. v. K.J. Electric Corp.*, 256 Ill. App. 3d at 725-26.) There must be some act by which defendant purposefully availed himself of the privilege of conducting activities within the forum State, thereby invoking the benefits and protections of its laws. (*Johnson v. Ortiz* (1993), 244 Ill. App. 3d 384, 388, 614 N.E.2d 408.) When determining the reasonableness of requiring a defendant to litigate in the forum State, a court should consider the forum State's interest in resolving the dispute, the plaintiff's interest in obtaining relief, and the interest of several States, including the forum State, in the efficient judicial resolution of the dispute and the advancement of substantive social policies. *Autotech Controls Corp. v. K.J. Electric Corp.*, 256 Ill. App. 3d at 726.

Plaintiffs contend that the record supports a finding that the defendants purposefully directed their business activities at the forum residents and that jurisdiction is reasonable. Plaintiffs make much of the fact that Chicago is listed on the map on the back of the Arrow Lodge brochure. We find this contention without merit. The brochure states in relevant part:

"Arrow Lodge Resort is a family resort located on the east shore of Thousand Island Lake, the largest of the fifteen navigable lakes of the Cisco Chain. We are located in Watersmeet, Michigan (12 miles southwest of the town of Watersmeet) and 15 miles from the town of Land O'Lakes, Wisconsin; and, 34 miles from downtown Eagle River, Wisconsin. Arrow Lodge is in the Ottawa National Forest and just one mile from Sylvania Recreation Area. Our location is 300 miles north of Milwaukee, Wisconsin and 390 miles north of Chicago, Illinois."

The map is approximately four inches square. It is a line drawing including the borders of Michigan, Wisconsin, Minnesota, a portion of Canada, the northeast corner of Iowa and the northern portion of Illinois. The Canadian—United States border is represented as well as Lakes Michigan, Superior and Huron. The cities of Duluth, Sault Ste. Marie, Detroit, Land O'Lakes, Minneapolis-St. Paul and Chicago are represented by small circles. Arrow Lodge is indicated by an arrow pointing into the Sylvania Recreation Area. Several interstates are represented with heavier lines, including I-94 and route 45, which are the routes that would get one from Chicago to the Watersmeet area. Underneath the map are directions from Watersmeet and Land O'Lakes.

Plaintiffs also point out the defendants were members of five tourist marketing associations which the defendants supplied with Arrow Lodge brochures, as well as the fact that Arrow Lodge was listed in the associations' tourist's brochures. The defendants do not contest any of these contentions. However, we must point out that each of these marketing associations was located in Michigan, with either 1-800 telephone numbers or Michigan phone numbers.

Plaintiffs further contend that the defendants, through the marketing associations, distributed the Arrow Lodge brochures as well as the association brochures containing Arrow Lodge listings at sports shows in Chicago. Plaintiffs have submitted an invoice for the "Chicagoland Sport Fishing, Travel & Outdoor Show." The invoice indicates that the GACVB had reserved a booth for the 1990 show. Although the invoice indicates that it was entered on March 27, 1989, it also indicates that it was cancelled September 20, 1990. The contract further indicates that the renewal contract was only offered to exhibitors in the 1989 Chicagoland Sport Fishing, Travel & Outdoors Show. There is no evidence that the Arrow Lodge brochures were actually distributed at the sports show or that GACVB's attendance resulted in any Illinois resident contacting Arrow Lodge. Plaintiffs do not contend that they learned of Arrow Lodge through attendance at any sports show in Illinois.[2]

Plaintiffs argue that defendants made approximately 100 telephone calls to Illinois residents annually. However, Carole testified that many of those phone calls would have been made by one of her children and that usually the only time she called a

----

[2] In *Finnegan v. Les Pourvoiries Fortier, Inc.* (1990), 205 Ill. App. 3d 17, 562 N.E.2d 989, the mere solicitation by employees whose only authority was to solicit business in Illinois was held insufficient to establish *in personam* jurisdiction over an employer corporation as one "doing business" in Illinois. In *Radosta v. Devil's Head Ski Lodge* (1988), 172 Ill. App. 3d 289, 526 N.E.2d 561, the court found that a Wisconsin corporation that advertised in Illinois, maintained an Illinois phone number, sold its services through local ski shops, purchased billboard space in Illinois and participated in an annual ski trade exhibition had insufficient contacts to manifest a consent to jurisdiction because the corporation's actual presence in Illinois through its agents in the State was occasional in the temporal sense. Finally, in *Dal Ponte v. Northern Manitoba Native Lodges, Inc.* (1991), 220 Ill. App. 3d 878, 884, 581 N.E.2d 329, 333, the court declined to find personal jurisdiction over a Canadian corporation which solicited customers at Illinois fishing shows and accepted reservations because its relationship with the State was "more akin to occasional or casual activity."

potential guest was when she missed a telephone call and received a message on the answering machine.

Plaintiffs argue that as a result of the defendants' purposeful marketing activities, nearly 50% of the defendants guests are Illinois residents, which is twice as many guests as from any other State, including Michigan.[3] Plaintiffs point out that it was through the defendants' marketing efforts that the plaintiffs learned of Arrow Lodge. However, plaintiffs fail to note that it was through the defendants' marketing efforts in Michigan, not in Illinois, that plaintiffs learned of Arrow Lodge.

■ Both the United States and Illinois Constitutions require an exercise of jurisdiction over a nonresident defendant to be reasonable and fair in light of the defendants' acts connected with the forum State. We do not believe that it would be fair to require the defendants to litigate this case in Illinois. Illinois does not have any substantial interest in resolving this case that could not be adequately addressed by the Michigan courts.

First, whether the number of defendants' telephone calls, the number of Illinois guests, or the fact that the Yakels sent a newsletter to individuals who expressed an interest in Arrow Lodge would give the defendants a fair warning that they would be sued in Illinois for alleged carbon monoxide poisoning that occurred in Michigan is extremely doubtful. Second, the cause of action has no relationship to Illinois except that plaintiffs came from Chicago. Finally, and most important under the facts of this case, it is unreasonable to expect the owners of an Upper Michigan Peninsula resort to defend this action in Illinois.

Debra Pilipauskas contacted the Michigan Travel Bureau in reference to fishing lodges and resorts. The Michigan Travel Bureau referred Debra to UPTRA and GACVB, two Michigan tourist associations to which the defendants belonged. Debra received brochures from UPTRA and GACVB that contained information

---

[3]No case has yet held that revenue derived from this State is the dispositive variable in resolving whether *in personam* jurisdiction may be asserted against a foreign corporation. (*Hulsey v. Scheidt* (1994), 258 Ill. App. 3d 567.) In *Rokeby-Johnson v. Derek Bryant Insurance Brokers, Ltd.* (1992), 230 Ill. App. 3d 308, 594 N.E.2d 1190, the court found the fact that the defendant may have earned $5 million in Illinois of no consequence to its analysis of whether the defendant was "doing business" in Illinois in a contract action. In *Kadala v. Cunard Lines, Ltd.* (1992), 226 Ill. App. 3d 302, 589 N.E.2d 802, the court held that substantial revenues earned from extensive advertising in Illinois does not alone submit a foreign corporation to the jurisdiction under the "doing business" test.

about Arrow Lodge. Thereafter, Debra contacted Arrow Lodge. Arrow Lodge sent Debra a brochure, rate sheet, and letter regarding the availability of units. In response to the information provided to her by telephone and correspondence from Arrow Lodge, Debra sent a deposit check. Debra's affidavit indicated that she and her family learned of, selected and travelled to the Arrow Lodge as a result of the information provided by UPTRA, GACVB, and Arrow Lodge.

The plaintiffs chose to initiate a contact with nonresident defendants and chose to travel to Michigan, where they intended to spend some time vacationing. We do not believe that it would be consistent with due process to require the defendants to litigate this case in Illinois. We do not believe that the contacts the defendants have with Illinois are sufficient for the Illinois courts to exercise *in personam* jurisdiction over the defendants. We find that the plaintiffs have failed to meet their burden of proof that jurisdiction exists over the defendants.

Accordingly, for all the reasons set forth above, we reverse the order of the trial court which held that it had personal jurisdiction over the defendants and remand the cause with directions that the complaint be dismissed.

Reversed and remanded.

GORDON and COUSINS, JJ., concur.