In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2527

WILLIAM R. KIPP,

*Plaintiff-Appellant,*

*v.*

SKI ENTERPRISE CORPORATION OF
WISCONSIN, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 60 — **Joan Humphrey Lefkow**, *Judge*.

ARGUED DECEMBER 2, 2014 — DECIDED APRIL 15, 2015

Before WOOD, *Chief Judge*, and WILLIAMS and TINDER, *Circuit Judges*.

WOOD, *Chief Judge*. William Kipp broke his collarbone as he was attempting to board a chairlift operated by Ski Enterprise Corporation of Wisconsin, Inc., in Merrimac, Wisconsin. Kipp sued Ski Enterprise in federal court in Illinois, alleging that the company had negligently caused his injuries. Ski Enterprise countered with a motion seeking dismis-

sal based on lack of personal jurisdiction. The district court granted that motion and dismissed the case without prejudice. We affirm.

**I**

On January 6, 2012, Kipp purchased a chairlift ticket at Devil's Head Ski Resort. As a result of the "unreasonably fast speed" of the lift in the boarding area, he was injured as he was attempting to board it. Kipp sued Ski Enterprise, the operator of the lift, in the Northern District of Illinois. He asserted that Ski Enterprise's negligence in operating the lift at such a high speed caused him to be thrown from the lift and to suffer a displaced left clavicular fracture (*i.e.*, a broken collarbone). The district court had subject-matter jurisdiction over the suit based on diversity of citizenship: Kipp is a citizen of Illinois, and Ski Enterprise is both incorporated and has its principal place of business in Wisconsin. See 28 U.S.C. § 1332(a)(1), (c)(1).

Ski Enterprise filed a motion to dismiss based on the court's lack of personal jurisdiction over it. After allowing Kipp to conduct limited discovery, the court granted the motion and dismissed the suit. In doing so, it relied on the following facts, which are not disputed by the parties. Ski Enterprise owns and operates the ski slopes at Devil's Head Resort in Merrimac, Wisconsin. Its only offices are in Wisconsin. The company does not engage in print or broadcast advertising in Illinois, but it does attend a trade show—the "Windy City Ski and Snowboard Show"— that takes place in Chicago every year. At the show, Ski Enterprise representatives speak with potential customers and obtain their email addresses. The company later sends out "email E blasts" to those contacts touting its services and

sales. There is also a website that includes information about both the Devil's Head Resort (which is owned by the Devil's Head Area Recreation Company, not a party here) and the ski slopes at the resort (which, as just noted, are operated by Ski Enterprise). Customers can reserve rooms at the resort through the website, which takes a deposit at that time, but they cannot purchase lift tickets on the site. The resort offers a vacation package called the "Chicagoland Express," but the package is not limited to Chicago—or even Illinois—residents. According to Joseph Vittengl, Ski Enterprise's general manager, approximately 60 to 75 percent of the resort's clients are from Illinois.

After the district court granted Ski Enterprise's motion to dismiss, Kipp timely appealed. We review the district court's decision to dismiss *de novo. Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002).

## II

Once a defendant has moved for a dismissal based on the lack of personal jurisdiction, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When a court does not hold an evidentiary hearing but instead grants the defendant's motion on the basis of written materials, as the district court did here, the plaintiff must establish merely a *prima facie* case of personal jurisdiction. See *id.*

A federal district court sitting in diversity must apply the personal jurisdiction rules of the state in which it sits. See *Hyatt*, 302 F.3d at 713. Illinois is the relevant state in this case. The governing statute in Illinois permits its courts to exercise

personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment. See 735 ILCS 5/2-209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."); *Hyatt*, 302 F.3d at 715 (noting no operative difference between federal constitutional and Illinois constitutional personal jurisdiction limitations, though acknowledging that the "two standards hypothetically might diverge"); *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990) (construing the due process guarantee in the Illinois Constitution to mean that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois"). In keeping with these authorities, we conclude that it is enough for present purposes to analyze federal due process limitations on personal jurisdiction. The parties have not argued, nor does Illinois law indicate, that the state's constitutional standards would differ from federal law in this case.

The Due Process Clause authorizes personal jurisdiction over out-of-state defendants when the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Courts recognize two types of personal jurisdiction: general and specific. *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014). General jurisdiction is "all-purpose"; it exists only "when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it

essentially at home in the forum State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (internal quotation marks and alteration omitted). Specific jurisdiction is case-specific; the claim must be linked to the activities or contacts with the forum. *Id.* Kipp disclaims any reliance on specific jurisdiction and relies solely on the general variety.

In recent years, the Supreme Court has clarified and, it is fair to say, raised the bar for this type of jurisdiction. Because general jurisdiction exists even with respect to conduct entirely unrelated to the forum state, the Court has emphasized that it should not lightly be found. Instead, as the quote above shows, general jurisdiction exists only when the organization is "essentially at home" in the forum State. *Goodyear,* 131 S. Ct. at 2851. Thus far, the Court has identified only two places where that condition will be met: the state of the corporation's principal place of business and the state of its incorporation. *Daimler*, 134 S. Ct. at 760. Any additional candidates would have to meet the stringent criteria laid out in *Goodyear* and *Daimler*. Those criteria require more than the "substantial, continuous, and systematic course of business" that was once thought to suffice. *Id.* at 760–61. The Due Process Clauses of the Fifth and Fourteenth Amendments permit courts, federal and state, to exercise general jurisdiction only when "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit … *on causes of action arising from dealings entirely distinct from those activities.*" *Id.* at 761 (quoting *Int'l Shoe*, 326 U.S. at 318).

With this background in mind, we turn to the question whether Ski Enterprise's contacts with Illinois are extensive

enough to say that Ski Enterprise is "at home" in the state. To begin with, it is undisputed that neither of *Daimler*'s "exemplar bases" applies; Ski Enterprise is a Wisconsin corporation, and it has its principal place of business in that state. Kipp accurately notes that it has a few contacts with Illinois, including its attendance at the annual trade show in Chicago, its use of that show to collect the email addresses of Illinois residents for marketing purposes, its targeting of Illinois customers through the Chicagoland Express package, its success in attracting a large number of such customers to the Devil's Head Resort, and the ability of Illinois customers to visit the Devil's Head Resort/Ski Enterprise website. These contacts come nowhere close to the *Goodyear*/*Daimler* standard. In fact, even before the Supreme Court's recent pronouncements, Illinois courts and federal courts applying Illinois law have often found a lack of general jurisdiction in similar situations.

In *Roiser v. Cascade Mountain, Inc.*, 855 N.E.2d 243 (Ill. App. Ct. 2006), another personal injury suit against a ski resort, the defendants had an Illinois telephone number, engaged in some advertising in Illinois, attended trade shows in the state, and maintained a website that allowed customers to purchase season passes and rent equipment. The court found that these contacts were insufficient to support general jurisdiction. *Id.* at 249–50. A judge in the Northern District of Illinois reached the same result in *Ruddy v. Wilmot Mountain, Inc.*, No. 10-C-07219, 2011 WL 3584418 (N.D. Ill. Aug. 12, 2011), where the defendant ski resort maintained Illinois phone numbers; advertised on Chicago Transit Authority buses, an Illinois billboard, and the radio; and attended trade shows in Illinois. The defendant's website allowed customers to purchase season passes and lift tickets

and contained maps to the resort from four Illinois cities. See *id.* at \*3. The court held that there was no jurisdiction, noting that "mere solicitation of business" is inadequate. See *id.* at \*3–4; see also *Berks v. Rib Mountain Ski Corp.*, 571 F. Supp. 500 (N.D. Ill. 1983); *Radosta v. Devil's Head Ski Lodge*, 526 N.E.2d 561 (Ill. App. Ct. 1988).

Ski Enterprise's contacts are similar—if not less significant—than those of the defendants in these cases. The company attends just one trade show per year, its website is mostly informative and does not allow customers to purchase lift tickets, and it does not maintain an Illinois office. Moreover, Ski Enterprise does not have many of the other characteristics that courts have used to support a finding of general jurisdiction: it has no employees in Illinois, it is not registered to do business in the state, and it does not advertise there. See *Goodyear*, 131 S. Ct. at 2852. Ski Enterprise does solicit business in Illinois, but no case has ever held that solicitation alone is sufficient for general jurisdiction. See *id.* (noting lack of solicitation as one factor in the conclusion that there was no general jurisdiction, but listing several other factors as well); *Ruddy*, 2011 WL 3584418, at \*3 ("Illinois courts consistently reject mere solicitation of business as a basis for the exercise of general personal jurisdiction."). Ski Enterprise's solicitation is relatively slight in any event: its Chicagoland Express package is not restricted to Illinois residents, and it talks to potential Illinois customers only once a year at a trade show. Finally, though the percentage of customers from Illinois is substantial, it is unclear whether that figure is caused by Ski Enterprise's Illinois solicitation or is simply a result of the close proximity of Illinois to the resort and the high population density of Chicago. The assumption that all of the Illinois residents at Devil's Head Resort are ski-

ing is also unfounded: the data represent overnight stays at the resort, not purchases of lift tickets. At best, it is an imperfect proxy for Ski Enterprise's customers; at worst, it may systematically overstate the percentage of Illinois residents, who may be more likely to stay overnight than skiers who live in Wisconsin. But even if it were a good indicator of Ski Enterprise's clientele, this figure, combined with the other contacts listed above, still does not suffice to make Ski Enterprise "at home" in Illinois. To the contrary, the company's dealings with Illinois are best described as inconsistent and perhaps even sporadic.

Kipp also insists that the Devil's Head Resort/Ski Enterprise website is a key factor in finding jurisdiction in this case. We have been clear that maintaining a public website is not sufficient, by itself, to establish general jurisdiction. See *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). There is nothing wrong with taking the website into account, even though it does not even allow customers to purchase lift tickets. But doing so does not help Kipp. The only conclusion that this record supports is that Ski Enterprise lacks continuous and systematic contacts with Illinois such that it is "at home" in that forum. Kipp thus has not made out a *prima facie* case of general personal jurisdiction.

## III

Ski Enterprise's contacts with Illinois are insubstantial and episodic. While *Goodyear* and *Daimler* may have left some room for the exercise of general jurisdiction in the absence of incorporation or principal place of business in the forum state, this is not one of those rare situations. We thus AFFIRM the district court's dismissal of the suit based on the lack of personal jurisdiction over Ski Enterprise.